(31 Misc. Rep. 160.)

### BUFFALO GAS CO. v. VOLZ et al.

(Supreme Court, Special Term, Erie County. May 1, 1900.)

TAXATION—SPECIAL FRANCHISES—ASSESSMENT—STATE TAX COMMISSION—CONSTITUTIONAL LAW.

Under Const. art. 10, § 2, providing that all city, town, and village officers shall be elected by the electors thereof, or appointed by such authorities as the legislature shall designate for that purpose, Laws 1899, c. 712, conferring on the state tax commissioners power to assess for purposes of taxation the value of special franchises, which shall include the value of the tangible property of any person. co-partnership, or corporation situated in, on, under, or above any street, and used in connection with the special franchises, is not unconstitutional, as conferring on officers appointed by the governor functions which should be performed by the city assessor to be elected by the electors of the city in which they act, since the act is

intended to establish a system for the taxation of those franchises which derive their value from rights originally vested in the state or some of its political subdivisions.

Action by the Buffalo Gas Company against Edward G. Volz and others, as members of the board of assessors of the city of Buffalo, to restrain defendants from extending on the assessment roll the valuation of a special franchise made by the state tax commissioners. Defendants demurred to the complaint. Demurrer sustained.

This action is brought by the Buffalo Gas Company, a domestic corporation engaged in the manufacture and distribution of illuminating gas within the limits of the city of Buffalo, and, by virtue of the authority of said city, occupying its public ways with mains and pipes for the purpose of distributing its gas. The complaint alleges that pursuant to the provisions of chapter 712 of the Laws of 1899 the state board of tax commissioners determined the valuation of the special franchise of this plaintiff as defined by said act at the sum of $2,191,000, and thereafter the said state tax commissioners filed in the city clerk's office of Buffalo a written notice fixing and determining the value of such special franchise at the sum above stated, and that thereafter the city clerk filed a copy of such notice with the defendants, the assessors of said city, requiring them to insert in the appropriate column of the assessment rolls of said city an assessment of $2,191,000, as the fair market value of said special franchise. The complaint further alleges that the defendants threaten to insert said sum in the said assessment roll, and that the insertion thereof will tend to the irreparable injury of the plaintiff. The complaint then charges that "the provisions of the said act, in so far as they authorize the assessment of property within the city of Buffalo for municipal purposes to be made by the state board of tax commissioners, or by any other officer than the assessors of said city elected by the electors thereof, or appointed by the authorities of such city, is in violation of the provisions of section 2, art. 10, of the constitution of the state of New York, and is null and void." Judgment is demanded, in the complaint, restraining the defendants from placing the valuation of such special franchise so fixed in the assessment roll now in course of preparation. The defendants interpose a demurrer to this complaint upon the grounds: First, that the court has no jurisdiction of the subject of the action; second, that the complaint does not state facts sufficient to constitute a cause of action.

Rogers, Locke & Milburn (John G. Milburn, of counsel), for plaintiff.
William H. Cuddeback, Corp. Counsel, for defendants.

KENEFICK, J. It is claimed that the act of 1899 (chapter 712) conferring on the state tax commissioners the power to assess for the purpose of taxation the value of "special franchises," as defined in said act, is repugnant to section 2, art. 10, of the state constitution. This section provides that all city, town, and village officers shall be elected by the electors of such cities, towns, and villages, or of some division thereof, or appointed by such authorities thereof as the legislature shall designate for that purpose. The state tax commissioners are appointed by the governor, by and with the consent of the senate. If the act in question conferred upon these commissioners all or any substantial portion of the powers heretofore vested in the local boards of assessors, it would be unconstitutional, within the rulings of the court of last resort. People v. Raymond, 37 N. Y. 428; People v. Albertson, 55 N. Y. 50. But this is not the intent, purpose, or effect of the act. The act is intended to establish a system for the taxation of those franchises which derive their

value from rights originally vested in the state, or a political sub-division thereof, as trustee for the people. "The power which the municipal corporation holds and exercises in controlling and regulating the use of the streets of New York has been delegated to it by the state. It is a grant of governmental power for local purposes, subject to the control of the supreme power of the state. The legislature may at any time resume the power delegated." People v. Kerr, 27 N. Y. 188, 214. By recent decisions of the court of appeals these franchises to use the public ways for the maintenance therein of surface and elevated railroads, gas mains, and the like, were declared to be not subject to taxation under existing laws. People v. Coleman, 126 N. Y. 448, 27 N. E. 818, 12 L. R. A. 762; People v. Barker, 146 N. Y. 304, 40 N. E. 996; People v. Clapp, 152 N. Y. 490, 46 N. E. 842, 39 L. R. A. 237; People v. Barker, 152 N. Y. 417, 46 N. E. 875. This act is intended to bring such franchise within the purview of the taxing power. It is not claimed in this action that the state may not subject such franchises to taxation. The only attack made upon the act is based upon the claim that it violates the principle of home rule secured to municipalities by the section of the constitution above quoted. That is the only question here presented or considered. The tangible property of a gas company, such as gas mains, pipes, etc., laid in public thoroughfares, when considered as the property of the company, is not "land," within the common-law rule. Waterworks Co. v. Bowley, 17 Q. B. Div. 358. At this time in the state of Michigan such property is defined as "personal property," for the purposes of taxation. 1 Comp. Laws Mich. § 3831, subd. 16. The court of appeals of this state decided that gas mains in highways were not taxable as real estate, because not embraced in the definition of "land" then upon the statute books. People v. Board of Assessors of City of Brooklyn (1868) 39 N. Y. 81. The law was thereafter amended (Laws 1881, c. 293) to include such property in that definition, and since such amendment local tax officers have assessed such property as real estate, so that it is by virtue of the legislative power of this state that gas mains in public thoroughfares have been assessed and taxed as land. For the same reason the rails, ties, etc., of a surface railroad (People v. Cassity, 46 N. Y. 46); the foundations, columns, and superstructure of an elevated railroad (People v. New York Com'rs of Taxes and Assessments, 82 N. Y. 459), erected upon or affixed to the public highways; a pier erected in public waters (Smith v. Mayor, etc., 68 N. Y. 552),—have been assessed and taxed as land. They became land by legislative declaration for the purposes of taxation. If the legislature determined to tax them as personal property, instead of as land, it would thereby in many instances deprive the local authorities of the power either to assess or tax such property physically located within their tax district. As personal property, it would be assessed at the place of residence of its owner. For such purpose the principal office of a corporation is its place of residence. Thus, a gas corporation having gas mains in the streets of Buffalo might be assessed and pay a tax thereon in New York City, where its principal office might be situated. This

would violate the spirit of home rule, because the property would not be taxed where located; but it would not violate this section of the constitution, because the power of assessment and taxation would still be vested in the local authorities of the place of assessment. If the legislature could have defined such property as "land" or as "personalty" at its election, it can change such definition from one to the other, or it may classify it anew. In the act of 1899 it has given this species of property a new designation in effect, if not in terms. It is true that the tangible property of such corporations as the plaintiff here is still included in the definition of land, and that in the same section defining land are the words "including the value of all franchises, rights or permissions to construct, maintain or operate the same, in, under, above, on or through streets, highways or public places." But that language is to be read in connection with the closing sentences of the section. By these provisions it is declared that:

"A franchise, right, authority or permission specified in this subdivision shall for the purpose of taxation be known as a special franchise. A special franchise shall be deemed to include the value of the tangible property of a person, co-partnership, association or corporation situated in, upon, under or above any street, highway, public place or public waters in connection with a special franchise. The tangible property so included shall be taxed as a part of the special franchise."

The language of this section is involved and redundant, and apparently conflicting, but the legislative intent is plain, when it is read in connection with the other provisions of the act relating to assessment and taxation of "special franchises." The intent to create a new species of taxable property is apparent. The intent thereby to change such tangible property included in a "special franchise" from its former character as real estate subject to local valuation is equally apparent. It may still be called land in one part of the section, but it is not intended thereby to describe it as land upon which the local authorities are to be permitted to place a valuation. Regarding the spirit and not the letter of the law, it is not land, but a "special franchise" for the purpose of taxation. Having created a new species of property as the subject of taxation, it was necessary to vest its assessment either in the local boards of assessors, as theretofore, or in other designated officers. The legislature chose the latter course. Ordinarily such a corporation as the plaintiff here obtains its right to lay its mains in the public highways by grant from the municipality in which such highways are situate, but in conferring such right the municipality is but an agent of the state. People v. Kerr, supra. The state has the power to confer such right by direct legislative act upon the gas corporation, and in its grant to the Queen City Gas Company (chapter 556, Laws 1893) it exercised this power. Under the decisions of the court of appeals above cited, the city could not tax that right or franchise to lay mains. But can it be doubted that the legislature could provide that for such right or franchise the corporation receiving it should from time to time pay into the state or city treasury, or both, a certain percentage of the value of that

right? If it could do that, could it not create a state tax commission to determine that value, with power to certify its determination to the local authorities, with the privilege in them of levying a tax based on such valuation? Such an act would confer on the local authorities a privilege which they did not possess without it.

It is urged, however, that the act of 1899 adds the value of the right or franchise to lay mains to the tangible property which has heretofore been locally assessed as land, and that it is a violation of the constitutional provision to confer the power of assessing land within the municipality hitherto exercised by the city assessors upon state officers. The answer is that the tangible property was assessable as land only because the legislature so defined it for the purpose of taxation and assessment. The same legislative power which designated it land for the purposes of taxation has by the act of 1899 designated it, and the franchise connected with it, a "special franchise" for the purpose of taxation. The tangible property in the highway could not well be assessed locally, and the right or franchise to have it there assessed by state authority. Such a system would create confusion and conflict, and lead to great abuses. To avoid such results, and as a matter of convenience, the legislature conferred the power to assess both upon the state officers. The levying and collection of the tax on such "special franchises," and the expenditure of it, are still wholly within the control of the local authorities. The city assessors have not been deprived of any power of assessment concerning any property other than that which is inseparably connected with and incidental to the right to use public property. As the ultimate source of such rights to use public property, the state has the power to designate state officers to determine the value of its own grants of such rights, made either directly or through its political subdivisions, and of the tangible property placed upon its public property pursuant to such franchises. As it did not irrevocably vest in the local authorities the assessment of such tangible property, it may vest such assessment in its own officers.

The Raymond Case, supra, relied on by the plaintiff, is not controlling on the question here involved. In that case substantially all of the powers of assessment and taxation theretofore vested in the assessors elected in each ward of the city of New York by the electors thereof were conferred by legislative act upon an officer styled a "commissioner of taxes," appointed by the governor, whose jurisdiction was confined to said city. The court held that this was a plain infraction of the constitutional provision here under discussion, and could not be upheld merely because the name of the office had been changed, and some additional, unimportant administrative duties conferred upon it. The same court which decided the Raymond Case afterwards upheld the constitutionality of an act of the legislature conferring upon the commissioners of Central Park, who were appointed by state authority, the care, management, and control of certain streets in the city of New York, for the purpose of regulating, grading, and improving the same. This power had been theretofore vested in, and exercised by, the mayor and aldermen of

the city of New York. In discussing this constitutional provision the court, in Astor v. Mayor, etc., 62 N. Y. 567, at page 573, says:

"It would be carrying the doctrine of noninterference with local officers far beyond any reported case to hold that in no case whatever could any of the powers existing in a local officer at the time of the adoption of the constitution be taken away without violating the provision cited."

I am of the opinion that the act of 1899, commonly known as the "Ford Franchise Tax Act," is a lawful exercise of legislative power, and must be upheld.

Demurrer sustained, and injunction vacated.