due diligence. The question of what is due diligence is a variable one, and is to be governed by the different circumstances of different cases. It has come to be accepted as the ordinary rule of practice, at least, that due diligence in the return of a pleading means within 24 hours after its receipt, under ordinary circumstances. Here the answer was served by mail upon May 3d, and in the ordinary course of mail received by plaintiff's attorneys upon the morning of May 4th. It was not returned until May 9th, or five days thereafter. Plaintiff's attorney, who makes the affidavit on this motion, says that he had charge of the action, and was out of town when the answer was received. His allegations in this respect, however, are quite carefully framed, and do not show that he was gone for any length of time, or that he was away except at the very time when the answer was received at his office. He further says that it was not called to his attention until May 8th. But this lack of information was due to those in his office, and is hardly available as a reason for not returning the pleading. We therefore have a case where a pleading was retained for five days before return, or before any notice was served of its alleged defects in verification. I do not think that this was due diligence, but that the right to treat the answer as a nullity was waived by its being retained so long without notice or return. The motion to compel plaintiff to accept defendants' answer is therefore granted, with $10 costs.

Motion granted, with $10 costs.

─────────────

(32 Misc. Rep. 321.)

NEW YORK, L. & W. RY. CO. v. ROLL et al.

(Supreme Court, Special Term, Erie County. August, 1900.)

1. TAXATION—RAILROADS—FRANCHISE TAX—HIGHWAY CROSSINGS.
   Gen. R. R. Law 1850, c. 140, conferred power on railways organized thereunder to cross highways in the construction of their roads, which act was amended in 1864 (chapter 582) so as to require the corporation to obtain an order from the supreme court, on notice to the highway commissioners, to cross such highway. Laws 1899, c. 712, as amended by Laws 1900, c. 254, authorized the taxation of special franchises, which should be deemed to include the value of the tangible property of every corporation situated in, upon, under, or above any highway. *Held*, that the right of a domestic railroad corporation to use a highway crossing was a special franchise subject to taxation, since a franchise may be derived directly from the state.

2. SAME—RIGHT OF RAILWAY IN HIGHWAY CROSSING.
   The right of a railroad to cross a highway is not exempt from the taxation of franchises authorized by Laws 1899, c. 712, as amended by Laws 1900, c. 254, authorizing the taxation of the tangible property of the corporation situated on a highway, on the theory that the crossing is an easement in the land derived from the owner of the fee, rather than a special privilege granted by the public.

3. SAME—CONSTRUCTION OF STATUTE.
   Laws 1899, c. 712, authorizes the taxation of special franchises, which includes the value of the tangible property of any corporation situated in, upon, under, or above any highway. The original draft of the law included franchise rights under, above, on, across, or through highways, but the word "across" was omitted from the bill as passed; but the other words in the act had been construed by the courts prior thereto,

in the construction of similar statutes, to include the crossing of highways. *Held*, that the omission of the word "across" did not show a legislative intent not to tax highway crossings of domestic railroad corporations.

Action by the New York, Lackawanna & Western Railway Company against John Roll and others, individually and as members of the board of assessors of the town of Alden, to restrain an assessment under the franchise tax law. Demurrer to the complaint sustained.

James McCormick Mitchell, for plaintiff.
Charles F. Tabor, for defendants.

KENEFICK, J. The plaintiff is a domestic corporation owning and operating a steam railroad which crosses six public highways at grade in the town of Alden, Erie county. The state board of tax commissioners, acting under chapter 712 of the Laws of 1899, as amended by chapter 254 of the Laws of 1900, known as the "Franchise Tax Law," have assessed these highway crossings as special franchises, fixed the valuation thereof, and filed a statement of such valuation with the clerk of said town. The assessors of the town, having received from the clerk a certified copy of such statement, threatened to insert such valuation in the annual assessment roll of the town, and to make the same a part of the assessment of the property of the plaintiff in the town. This action is brought to enjoin the assessors from placing such valuation in their assessment roll, and this relief is demanded upon two grounds, set forth in the complaint: First, that the authority vested in the state board of tax commissioners by the franchise tax law is repugnant to and violative of section 2 of article 10 of the constitution of this state; second, that these highway crossings do not constitute a special franchise, within the meaning of said law, and therefore are not taxable as such. The defendants interpose a demurrer upon the ground, among others, that the complaint does not state facts sufficient to constitute a cause of action, and the questions are thus presented for determination.

A ruling upon the constitutional question involved was made by me in the case of Gas Co. v. Volz, 31 Misc. Rep. 160, 64 N. Y. Supp. 534, and is adhered to in this case. The correctness of plaintiff's second contention has been urged with great force and skill by the learned counsel for the plaintiff, and his claims will be briefly reviewed. The general railroad law of 1850 (chapter 140) conferred power upon railroad corporations organized thereunder to cross the highways intersected by their roads. This law was amended in 1864 (chapter 582) so as to require the corporation to obtain an order of the supreme court, upon notice to the highway commissioner of the town, to effect such crossing. These provisions of law have continued in force, in substance, ever since. The plaintiff insists that the authority to cross highways sprang into being with the creation of the corporation, that it is a part of the franchise to be a corporation, and that, to constitute a special franchise, some particular railroad must be grantee of the right, or some particular highway or

highways must be the subject of the grant. As I view it, this claim argues a misconception of the term "special franchise." As applied to railroads, this species of property is defined as the "franchise, right or permission to construct, maintain or operate the same in, under, above, on or through streets, highways, or public places." Laws 1899, c. 712, § 1. A special franchise thus derives its character from the nature of the grant, to wit, the right to occupy the public ways. This right does not lose its character as a special franchise because it emanates directly from the state, rather than indirectly through its political subdivisions, nor because it comes into being with the creation of a corporation, rather than by subsequent action of the legislature or its duly-authorized municipal agents. The tax on its franchise to be a corporation is imposed irrespective of whether it crosses any highways, or of the number of highways crossed. Authority to run "upon and along" highways is conferred by the same section of the general railroad law which confers the right to "cross" highways. If the plaintiff's argument is sound, then a railroad might, under its general powers, run for some distance along a highway, without possessing a special franchise therein subject to taxation. The case of Burt v. Railroad Co. (Sup.) 21 N. Y. Supp. 482, is not authority for the proposition that a railroad cannot run along a portion of the public highway, even though it obtains an order of the supreme court, as required by statute. That case goes only to the extent of holding that a railroad cannot construct its entire line along the public highways.

The next argument of the plaintiff is based upon its ownership of the fee of the highway where the railroad crosses. It is claimed that, as the people of the state possess only the right of passage in the highways, all other rights therein remain in the owner of the fee; that the right to cross the highway is in the nature of an easement; that the easement is carved out of the fee; and that, as the fee and the easement exist in the corporation, the easement merges in the fee. The argument is plausible, but, as it seems to me, without merit. The owner of the fee of the highway acquires no right by reason of such ownership to construct a railroad across it, and he is as powerless in this respect as if the fee were owned by some other person or by the municipality. The only authority which can confer that right is the legislative power of the state, and this power is not one whit the less because the ownership of the fee of the highway is vested in the abutting owners. A more exact statement of the situation is that the franchise to cross the highway is carved out of the public easement, rather than out of the fee.

In further support of the cause of action set forth in plaintiff's complaint, it is urged that the language used in the franchise tax law in defining a special franchise indicates the legislative intent to exclude highway crossings. Upon the argument of this demurrer the original draft of the law as introduced in the legislature was submitted. It appears therefrom that a special franchise, as applied to railroads, was defined to be "all franchises, rights, or permission to construct, maintain, or operate the same in, under, above, on, across, or through streets, highways or public places." This

was the language of the bill when it was referred to the senate committee on taxation and retrenchment for consideration.  As reported from the committee back to the senate, the word "across" was omitted, and in this form the bill became a law.  It is argued that the preposition "across" is the only one of those used which aptly and completely describes the physical relation of a railroad to a highway at a highway crossing, and that its elimination indicates the legislative intent to exclude highway crossings from the operation of the statute.  There is some authority for referring to legislative journals in the interpretation of statutes (Blake v. Banks, 23 Wall. 307, 23 L. Ed. 119; Edger v. Commissioners, 70 Ind. 331), but the uncertainty surrounding this method of interpretation is apparent when we consider the many motives which influence legislative action.  Is it not more reasonable to assume that the senate committee regarded the word "across" as superfluous, and that highway crossings were sufficiently defined by the other words used? If the other prepositions used have been construed by the courts, in statutes somewhat similar to this, to describe appositely and appropriately a highway crossing, then this court is bound to assume that the legislature used these words in this act in the sense in which they have been so judicially interpreted.  In the case of Barlow v. Teal, 15 Q. B. Div. 403, Lord Coleridge lays down the general principle (page 405):

"That where cases have been decided on particular forms of words, in courts, and acts of parliament use those forms of words which have received judicial construction, in the absence of anything in the acts showing that the legislature did not mean to use the words in the sense attributed to them by the courts the presumption is that parliament did so use them."

The same rule prevails in the United States.  In Whitcomb v. Rood, 20 Vt. 49, the rule is thus expressed (page 52):

"But when terms or modes of expression are employed in a new statute which had acquired a definite meaning and application in a previous statute on the same subject, or one analogous to it, they are generally supposed to be used in the same sense; and, in settling the construction of such new statute, regard should be had to the known and established interpretation of the old."

See, also, Com. v. Hartnett, 3 Gray, 450; The Abbotsford, 98 U. S. 440, 25 L. Ed. 168.

An application of this rule to the case at bar destroys the force of the argument based upon the omission of the word "across," for the other prepositions used in the act have been held to be synonymous with "across."  In the case of Osborne v. Railway Co., 27 Hun, 589, the question presented was whether an order of the supreme court was necessary to authorize the construction of a railroad "across" a highway, under the general railroad act, above referred to.  The original act of 1850 authorized the construction of a railroad "across, along or upon" any highway, but the act was amended in 1864 so that nothing therein contained should be construed to authorize the construction of a railroad "upon and along" any highway without an order of the supreme court authorizing the same. It was contended that the omission of the word "across" in the

amendment of 1864 was significant, as indicating that an order of the court was not required when the railroad ran "across" the highway, and not "upon and along" it. Judge Cullen, in his opinion, held that an order of the supreme court was necessary to authorize the crossing of the highway, and at page 590 says:

"We think that, wherever the railroad is constructed upon the surface of the highway, it is 'along and upon' so much of the highway as is occupied by it."

In the case of Transit Co. v. Dash, 125 N. Y. 93, 26 N. E. 25, 10 L. R. A. 728, the court of appeals was called upon to construe an act which prohibited the building of a railroad "in, upon or along any or either of the streets or avenues of the city of New York," except under the authority and subject to such regulations as the legislature might thereafter provide. It was urged that this act only prohibited the building of a railroad "through" the length or a portion of the length of a street, and did not apply to the "crossing" of a street. The court refused to assent to such a construction of the statute, and Judge Peckham, writing the opinion of the court, says (pages 96, 97, 125 N. Y., page 26, 26 N. E., and page 729, 10 L. R. A.):

"If the road were built through the length of a street, its location might be fairly described by the use of either one of the three words contained in the statute,—'in, upon or along' such street. But to describe a road which simply crossed a street as being built 'along' such street would be using language neither appropriate nor exact. To say of such a road that it would be 'in' or 'upon' that street at the point where the road crossed it would be both appropriate and exact. There is a difference in the meaning of these three words as used in the statute, and some effect should be given to such difference. If their meaning be construed to simply prohibit a railroad along the length of the street, no effect whatever is given to this difference. The words used are certainly apt to describe a railroad which crosses a street. Such a railroad is plainly, for that distance, both 'in' and 'upon' the street which it crosses. If not 'in or upon' it at that point, where is it? No description of its whereabouts at that particular point is better than to say it is 'in or upon' the street which it crosses. It is sufficient, and it is true. It is not necessary that the railroad should pass along the surface of the street in order to be in or upon it."

Again (page 98, 125 N. Y., page 26, 26 N. E., and page 729, 10 L. R. A.) he says:

"It is well known that sometimes more words are used in a statute than are actually necessary to express the meaning of its framers. The fact that the word 'across' or 'intersect' has been frequently used in former statutes where they intended to permit or prohibit the crossing of a street is not of any great importance in the construction of another statute in which such word is absent, provided the language actually used is sufficient and appropriate to express the idea that the crossing is permitted or prohibited. If the language be broad enough, and there be no other ground for narrowing its natural meaning, it should not be narrowed because in some other statutes additional words have been used to express the same idea."

It will be observed that the prepositions "in" and "on," which were construed in the two cases cited as aptly describing a highway crossing, are used in defining a special franchise. In view of this judicial interpretation of these words, it became the duty of the legislature, if it intended to exempt highway crossings from taxation under this act, to use language which would clearly indicate its purpose to do

so. The natural meaning of words should not be tortured to force an interpretation in accord, perhaps, with the intent of some or all of the senate committee which eliminated the word "across," but which may have been entirely foreign to the intent and purpose of the legislature itself in passing the act.

The power of the court to grant the relief prayed for is questioned by the demurrer interposed, and it is, to say the least, doubtful; but, in view of the conclusion I have reached upon the other grounds, I deem it unnecessary to examine this question. The demurrer is sustained, with costs.

Demurrer sustained, with costs.