[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 169 
By this proceeding the appellant, as relator, sought to review by certiorari certain special franchise taxes assessed upon its occupation of streets and crossings in the city of Buffalo for the year 1908. One hundred and thirty-nine separate assessments were involved, but seventeen of them have dropped out of sight so far as this review is concerned, owing to the stipulations of the parties by which they were canceled and annulled.
A return was filed by the board of tax commissioners *Page 171 
and, under an order of the court at Special Term, an amended return. The city of Buffalo having been allowed to intervene, also filed a return, and upon the argument of this appeal, certain intervenors, who had not been made parties of record, were permitted to file briefs. The issues were referred to a referee to report the facts with his opinion, a trial was had, much documentary and some oral evidence received, findings made, an elaborate opinion written and the conclusion reached that the assessments should be annulled, because the Tax Law does not authorize the taxation of steam railroad crossings. A multitude of findings of fact were regarded as necessary, because each assessment stood by itself, but most of the findings are typical, involving the ordinary street crossing at grade, the overhead crossing made pursuant to the action of grade crossing commissioners and the occupation of a street lengthwise for a certain distance.
Upon the motion to confirm the report a different view was taken both of the law and the facts by the Supreme Court at Special Term. Mr. Justice CHESTER did not adopt the facts as found by the referee, but making findings for himself, overruled all the contentions of the relator, except that he adjusted the tax on the basis of seventy-six per cent, according to the actual valuation of other property in the city of Buffalo, the valuation made by the tax commissioners having been based on the actual value. His able opinion leaves comparatively little to be said upon the main questions involved.
Upon appeal to the Appellate Division the order of the Special Term was affirmed, all the justices concurring except two who dissented only in part, as the record states, "being of the opinion that the relator is not assessable for street occupation where the street was opened and extended across the right of way, the fee of which had been purchased and conveyed to the relator before the street was opened." *Page 172 
The main contention of the appellant is that the statute authorizing the taxation of special franchises does not apply to steam surface railroads, because their crossings are not land according to the provisions of the Tax Law. The history of legislation relating to land as the subject of taxation shows many changes made to conform to the progress of invention resulting in new structures on, over and under land, which were not regarded as land until made such by statute. The original definition of land as made in 1827 included the land itself, buildings erected and trees growing thereon and all mines, minerals, etc., except mines belonging to the state. (1 R.S. 388, § 3.) Under this statute it was held that iron mains laid beneath the surface of streets to conduct illuminating gas to consumers, not being erected upon or affixed to land owned by the gas company, could not be regarded as real estate for the purpose of taxation. (People ex rel. Citizens' Gaslight Company ofBrooklyn v. Board of Assessors of the City of Brooklyn,39 N.Y. 81, 87.)
This decision doubtless led to the change made in 1881 whereby the definition of land was expanded in several particulars and among others so as to include "all surface, underground or elevated railroads; all railroad structures, sub-structures and superstructures, tracks and the iron thereon; branches, switches and other fixtures permitted or authorized to be made, laid or placed in, upon, above or under any public or private road, street or grounds; all mains, pipes and tanks laid or placed in, upon, above or under any public or private street or place;" etc. (L. 1881, ch. 293, § 2.) In 1896 the definition was further extended so as to include all supports and inclosures for electrical conductors and other appurtenances, and to agencies for conducting steam, heat, water, oil, electricity, etc. (L. 1896, ch. 908, § 3.)
In 1899 the Tax Law was so amended as to include special franchises in the definition of land. The essential change was made by adding to the words "all surface, *Page 173 
underground or elevated railroads," the following: "including the value of all franchises, rights or permission to construct, maintain or operate the same in, under, above, on or through, streets, highways or public places." (L. 1899, ch. 712, § 1.)
It is claimed by the appellant, and the referee so held, that the word "surface," as used in the statute of 1899, refers exclusively to street railroads operated by horses or electricity and running from point to point within a city or village, and that it does not include railroads operated by steam and running across the state from one terminal point to another. It must be conceded that the statute in this form was open to such construction, which under the rule of ejusdem generis would not be unreasonable; still steam railroads are operated upon the surface the same as street railroads and the definition includes all surface roads. If the object of the legislature was to describe railroads with reference to their location, no more appropriate word could have been used than the word "surface" to describe all railroads located on the surface of the ground. Every railroad with reference to its location must fall within one of three classes, those constructed on the surface, those underground and those elevated above the ground. A road with its tracks depressed somewhat in an excavation, or elevated on an embankment so as to make a good grade, is a surface road, because it is on the surface as changed for gradient purposes. If the intention was to confine the statute to street surface roads why was the word "street" not used as it had been in the Constitution as amended in 1874 and in several acts of the legislature, including the act of 1884 relating to "street surface railroads," and the General Railroad Act of 1890? (Const. art. 3, § 17; L. 1884, ch. 252; L. 1890, ch. 565, art. 4; L. 1897, ch. 415, § 5.) It may be observed that in addition to the description thus adopted in the statutes cited, the phrases "surface railroads not operated by *Page 174 
steam" and "steam surface railroads" were also in general use. (L. 1896, ch. 908, §§ 184, 185 and 194; L. 1897, ch. 754, § 1; L. 1898, ch. 80, § 1; L. 1898, ch. 520, § 1.)
Under the statute as amended in 1899 the state board of tax commissioners at once assumed jurisdiction and assessed steam railroad crossings by the thousand. In 1900 a case arose where a steam railroad had been assessed for the privilege of crossing six public highways at grade, and it was contended that such highway crossings did not constitute special franchises within the meaning of the statute and were not taxable as such. The question was argued by distinguished counsel before Justice KENEFICK, who wrote an elaborate and well-considered opinion, which was promptly published, sustaining the tax and holding that the language of the Franchise Tax Law included the crossings made by steam railroads over public streets. (New York, Lackawanna Western Ry. Co. v. Roll, 32 Misc. Rep. 321.) That decision was not appealed from but stood unchallenged for six or seven years. Similar assessments were made year after year in a vast number of cases affecting all the steam railroads in the state, and as a rule they acquiesced and paid the taxes, although some attacked the statute on other grounds. In 1900 the state board of tax commissioners when reporting to the legislature recommended that special franchises should not include the crossing of a street unless it was of a certain length, "because the taxes resulting from purely highway crossing valuations are not adequate to the cost to the state of making the same" and because the "identification of many highway crossings is impracticable." The governor called the attention of the legislature to this recommendation in his annual message. The legislature responded promptly by adding a new subdivision which provided that "the term special franchise shall not be deemed to include the crossing of a street, highway or public place where such crossing is not at the *Page 175 
intersection of another street or highway, unless such crossing shall be at other than right angles for a distance of not less than two hundred and fifty feet, in which case the whole of such crossing shall be deemed a special franchise." (L. 1901, ch. 490, § 1.) This amendment, especially when read in connection with the recommendation, indicates that the crossings referred to were in the country and, hence, belonged mainly to steam railroads. The tax commissioners, thereupon, assessed on this basis by including all crossings not thus excluded and the steam railroads paid the taxes without attempting to review the legality of the assessments in this respect, and acquiesced in the construction of the tax commissioners that "surface" railroads meant steam railroads as well as street railroads. Although the statute was frequently attacked in other respects, the question now under consideration does not appear to have been brought before the courts.
In 1907 upon the statement of the state tax commissioners that a great deal of property was escaping taxation and their recommendation that a further change was desirable, the statute was so amended as to provide that "the term `special franchise' shall not be deemed to include the crossing of a street, highway or public place outside the limits of a city or incorporated village where such crossing is less than two hundred and fifty feet in length * * *." (L. 1907, ch. 720, § 1.) It is expressly provided by the amendments of 1901 and 1907 that they shall not apply to any elevated railroad.
I see no escape from the position that any doubt existing in the statute of 1899 was removed by the amendments of 1901 and 1907. The legislature knew from the reports of the state tax commissioners that they were assessing steam surface railroads the same as street surface railroads. It is presumed to have known of the decision of Justice KENEFICK made in 1900, yet they enacted these amendments, not only without expressly *Page 176 
excluding steam railroads from the operation of the act, but even including them by necessary implication. The exclusion of certain crossings outside the limits of a city or incorporated village shows an intent to include all other crossings, including those in the country which were largely those of steam railroads, and the provision that the amendments should not apply to elevated railroads raises the implication that it does apply to all other railroads. Even if the legislature in 1881 and 1899 used the word "surface" with the meaning claimed by the appellant, it obviously changed that meaning by subsequent amendments, impliedly but necessarily extending it to steam roads. We think that the statute as it stood when the assessments in question were laid, included the crossings made by constructing steam surface railroads across streets already in existence.
Only one other question requires discussion, and that is whether the statute applies to a crossing made by the construction of a new street across a railroad after it had acquired its right of way, built its road and was in full enjoyment of every privilege needed for effective operation. The trial court found that as to thirty-two of the crossings affected the railroad was built first and the street extended across it afterward. In other words, it was not a case of the railroad crossing the street but of the street crossing the railroad, because the existence of the railroad antedated the existence of the street. A street crossing franchise consists of the right to lay tracks across a street and use them, when but for a grant of the right to do so from competent public authority it would be a trespass. (People ex rel. Metropolitan Street Ry. Co. v. StateBoard of Tax Comrs., 174 N.Y. 417, 435.) The franchise is created by grant and cannot be acquired by purchase or condemnation. The appellant contends that in the instances now under consideration there was no grant, because it already owned the right of way and needed no further privilege. It had all that *Page 177 
it could have and when the street came to it a burden was added but no right granted.
The argument of the respondent is that when the predecessor of the relator was incorporated, the state said to it in substance: "You may construct your railroad along the line laid down on your map and cross any existing street, and as the state extends new streets across your road you may operate your road across them." To support the position that this was tantamount to a grant to take effect in the future, reliance is placed upon a case decided in 1862 in which Chief Judge DENIO held that a highway might be extended across the track of an existing railroad without compensation and that this was not taking private property for public use in violation of the Constitution. (Albany NorthernR.R. Co. v. Brownell, 24 N.Y. 345.) The argument of the court was that "railroad companies under the general act do not acquire the same unqualified title and right of disposition, to the real estate taken for the road and paid for according to the act, which individuals have in their lands. The statute declares the effect of the proceedings which it authorizes to be, that the company `shall be entitled to enter upon, take possession of, and use the said land for the purposes of its incorporation during the continuance of its corporate existence;' and it further declares that the land which it thus appropriates shall be deemed to be acquired for public use. The title to the land being thus limited to its use for the purposes of the railroad enterprise, it is necessarily subject to the exercise of all those powers reserved to the legislature to which the franchises of the corporation are subject. If the latter can be restricted or modified by subsequent legislation, the uses to which the land which the corporation has acquired may be changed by the same authority. * * * A railroad laid out upon or near the natural surface of the earth may be crossed, without material inconvenience, by a common highway, on the same grade with the railroad track. The property *Page 178 
of the railroad is not taken away from the proprietors, who are still allowed to use it for all the purposes for which it was acquired from the original owner." (p. 349.)
The actual decision was that chapter 62 of the Laws of 1853, now repealed but re-enacted with some safeguards by the Grade Crossing Act, in authorizing the construction of highways across railroad tracks without compensation, does not violate the constitutional provision against taking private property for public use or impair the obligation of contracts. This is far from holding that the charter of a railroad company involves the grant of a franchise by anticipation whenever a new street is laid out across its tracks. When the relator or its predecessor acquired its right of way, whether in fee or not is unimportant, it had the right to use it without the grant of any further privilege from the state. It was its own property, acquired by the condemnation or purchase of land or an interest therein from private owners, with no grant from the state. Years afterward, when a highway was extended over its right of way, no grant was made to it of a franchise or anything else, but something was taken away from it without compensation, which could be justified only upon the ground that Judge DENIO placed it. In other states compensation has been held under such circumstances essential to the validity of the statute. (Illinois Central R.R. Co. v.City of Bloomington, 76 Ill. 447; Chicago Grand Trunk R.Co. v. Hough, 61 Mich. 507; Old Colony Fall River R.R. Co. v. County of Plymouth, 14 Gray, 155.) As the relator owned its right of way it had all it could get and all that it needed. No grant of a special franchise was necessary and never became necessary, for it built its road on its own private right of way. It did not cross an existing street, but a new street came to it and crossed its tracks, thereby adding a burden but conferring no benefit. Instead of the railroad having an easement to cross the street the street has an easement to cross the *Page 179 
railroad. (N.Y.C. H.R.R.R. Co. v. City of Buffalo, 200 N.Y. 113,119.)
The relator accepted its charter to be a railroad corporation, and the charter was subject to amendment under the power reserved by the legislature and hence was subject to the prospective burden of streets being extended across the tracks; still the statute subsequently imposing that burden did not make a grant or create a special franchise. In other words, the general franchise or charter of the relator or its predecessor authorized the construction of a railroad from the city of Buffalo to some other terminal point. Afterward, the fee of the land necessary to construct the road, or a right of way over the same, was acquired and after the railroad had been in operation for years the street came along and crossed it, but the right of the railroad to keep its tracks where they were continued the same as before. It remained in possession by virtue of its original property right only. When the legislature under its reserved power so amended the charter of all railroad corporations as to authorize new streets to be extended over their tracks already laid on private rights of way, it did not intend to grant and did not in fact grant a special franchise. Nothing in the statute or in the history of legislation upon the subject warrants such an inference. The question is not what the legislature may do but what it has done.
The object of the Special Franchise Tax Act is to tax railroad corporations for privileges granted them in the streets which they occupy on their lines of railway and if, after they have their rights of way secured over private land, a public highway is laid across the tracks, while there is a crossing it is not a crossing made by the railroad or through public favor so far as the railroad is concerned. The relator, or one of its predecessors, was given the right to be a corporation, to acquire land and to build its road between certain terminal points. It bought its right of way and built its road accordingly. It needed *Page 180 
no special franchise in order to use and enjoy its right of way to the utmost extent possible for railroad purposes. Years afterward a street was run across its tracks and a crossing thus created. Such a crossing, made under such circumstances, is not a special franchise within the meaning of the statute, because the railroad was built on its own right of way before the street came into existence and no additional right was granted to the railroad company by the extension of a highway across its tracks.
All the other contentions of the relator, after due consideration, are overruled without discussion.
The order appealed from should be so modified as to exclude from taxation such crossings as were made after the relator or its predecessor in title had acquired its right of way and laid its tracks thereon, and as thus modified affirmed, without costs in this court to either party, and the proceeding remitted to the Supreme Court at Special Term to enter judgment accordingly.