THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent, *v.* STATE TAX COMMISSION, Appellant. (City of Little Falls, Assessments for the Years 1908–1917, Inclusive.)

Third Department, May 16, 1923.

Taxation — special franchise tax — value of retaining wall and fill constructed by railroad across canal lands should be included in calculating tax — value of bridge over highway, formerly turnpike, should be included in calculating tax.

In assessing the special franchise taxes of a railroad company there should be included the value of a retaining wall and fill constructed by the railroad across canal lands under permission by the State which reserved the right to revoke the permit and require the railroad to remove its tracks.

Likewise, the value of a bridge constructed by the railroad over the highway, which was formerly a turnpike, should be included. The highway, while under control of the turnpike company and subsequently while under control of the railroad, was a public highway, and after its surrender to the State it remained a public highway and the crossing of the highway by the railroad is a special franchise.

APPEALS by the defendant, State Tax Commission, from ten final orders of the Supreme Court in certiorari proceedings to review the special franchise tax assessments against the relator in the city of Little Falls, N. Y., for the years 1908–1917, inclusive, entered in the office of the clerk of the county of Albany on the 26th day of August, 1920, upon the report of a referee.

*Carl Sherman, Attorney-General [John M. Farrell, Deputy Attorney-General,* and *James A. McTiernan* of counsel], for the appellant.

*Alex S. Lyman [George H. Walker* and *Crosby J. Beakes* of counsel], for the respondent.

VAN KIRK, J.:

The taxes in question here are special franchise taxes. By stipulation and consent of the parties but two questions are presented upon this appeal:

1. Whether the value of the retaining wall and fill constructed by the relator across canal lands, at Little Falls, should be included in calculating the tax;

2. Whether the value of the relator's bridge over Eastern avenue in Little Falls should be included in calculating the tax. (This street is also called East Main street. We shall call it Eastern avenue.)

As to the first question: In 1881 permission was granted to the New York, West Shore and Buffalo Railway Company, now the West Shore Railroad Company, to construct at its own expense a railroad across lands of the State within the blue line of the Erie canal at Little Falls. For this permission the railroad company paid to the State a sum fixed by appraisers. The State reserved the right at any time to revoke the permit and require the railroad company to remove its railroad from the lands covered by the permit. The land surface was of such character that the railroad company must build either a trestle or a retaining wall and fill across a part of this land. It constructed a retaining wall and fill along the southerly side of the canal in order to secure the proper grade of the railroad. No question is raised as to the valuation placed on the retaining wall and fill, nor is it questioned that the relator has a special franchise across these lands which are a public place. (Tax Law, § 2, subd. 3; Id. § 2, subd. 6, as renumbered from subd. 3 and amd. by Laws of 1916, chap. 323; *People ex rel. New York Central & H. R. R. R. Co.* v. *Woodbury,* 167 App. Div. 535; affd., 216 N. Y. 651.) The valuations of the railroad property, except the retaining wall and fill, are allowed. The referee has found that the wall and fill were the property of the State of New York, not the property of the railroad company. This retaining wall and fill were a necessary part of the railroad construction; they were as much the property of the railroad company, and as material to the operation of the railroad, as were the ties and the rails. Had the railroad company elected to construct a trestle rather than a fill to support its tracks, it seems to us plainly that the trestle would be the property of the railroad company for the purpose

464  PEOPLE EX REL. N. Y. C. & H. R. R. R. Co. v. STATE T. COMM.

Third Department, May, 1923.  [Vol. 205

of this tax. (Tax Law, § 2, subd. 3; Id. § 2, subd. 6, as renumbered from subd. 3 and amd. by Laws of 1916, chap. 323.) The relator says and the referee has found that the railroad company cannot sell the wall or remove it; but this is not a true test. In *People ex rel. Buffalo & L. E. T. Co.* v. *Tax Comrs.* (209 N. Y. 502) the railroad company, pursuant to an agreement with the town in which it was located, constructed a viaduct to carry both the railroad tracks and the public highway. The cost was apportioned between the railroad company and the town and the company was obligated to maintain, repair and if necesary reconstruct the viaduct during the term of the franchise. The court said: " Although the contract is carefully drawn so as to declare that the structure is at all times and for all purposes to be deemed a public highway, it is nevertheless manifest that the viaduct, or some structure of like character in the same locality, is essential to the operation of the relator's railroad there, just as necessary * * * as are the ties laid in a street to support its rails. The viaduct is none the less a part of the tangible property of the railroad company, because the public enjoy a joint right of user." In that case the railroad company could not remove the viaduct or sell it; it answered the highway purposes as well as the railroad purposes; but it was held to be railroad property for the purposes of the franchise tax. (See *People ex rel. Rochester, S. & E. R. R. Co.* v. *Moroney,* 224 N. Y. 114.) *People ex rel. Buffalo & L. E. T. Co.* v. *Tax Comrs.* (209 N. Y. 496) is not in conflict with this holding. It was there held that a pavement between the rails and on either side thereof, the expense of which the law required the railroad company to bear, " is not to be treated as the tangible property of the railroad company in making up the assessment or included therein as an item of the company's tangible property." It was also held: " The Railroad Law requiring street surface railroad companies to pay the cost of paving between their tracks and for two feet outside thereof is an exercise of the taxing power," and that the paving is a burden placed upon the railroad company for the " benefit of the community at large " and in no degree for the benefit or use of the railroad. In our view the retaining wall and fill are but part of the roadbed, constructed by the railroad company for its own advantage, and only indirectly if at all for the advantage of the canal; the only necessity, as far as the canal is concerned, for the construction of the retaining wall arose out of the construction of the fill. Although it is found that the retaining wall could not be removed by the railroad company with profit, there is no stipulation that it shall be left in case the railroad company is required to remove its

lines. On the other hand, it is provided that, if the permit be revoked by the State, it must remove its road from the canal lands. The value of the retaining wall and the fill should be considered for the purposes of the special franchise tax.

As to the second question: Here again no question is made as to the value of the relator's property and it *is* not disputed that the railroad company owns the overhead bridge.

The Mohawk Turnpike and Bridge Company was incorporated by chapter 105 of the Laws of 1800 for the purpose of constructing a bridge across the Mohawk river at Schenectady and of making a good and sufficient road from this bridge through the Mohawk Valley and the present city of Little Falls to the village of Utica. This company was authorized to acquire any necessary land for making the road and to establish toll gates. It appears that at some places at least there did exist roads for the passage of the public and that the turnpike company occupied such roads. In 1833 the Utica and Schenectady Railroad Company was incorporated by chapter 294 of the Laws of 1833. This act required that the railroad company, before it began operations as a railroad, should pay or tender to the president and directors of the Mohawk Turnpike Company the sum of twenty-two dollars and fifty cents per share for its stock and thereupon the railroad company shall possess all the rights, privileges, property and estate of the turnpike company; and, after completing its railroad, it may abandon the turnpike, giving notice of such intention to the commissioners of highways, and then the said turnpike shall be kept in repair in the same manner as other highways. The relator purchased the capital stock of the turnpike company and constructed the crossing of Eastern avenue in question by an overhead bridge. In 1890 by formal document the turnpike and all franchises and property therein were surrendered and abandoned. It is the position of the relator, and the referee has so found, that the turnpike was not a public highway, but was the property of the turnpike company when this crossing was made. The argument is, the railroad company being the owner of all the stock of the turnpike company constructed this crossing upon its own lands; and, after the abandonment of the turnpike the road came into existence as a public highway, the highway crossing the railroad property, rather than the railroad crossing the public highway. (*People ex rel. N. Y. C. & H. R. R. R. Co. v. Woodbury,* 203 N. Y. 167.) In this position we think the referee is in error. " A turnpike road is a public highway." (*Fox v. Union Turnpike Co.,* 59 App. Div. 363, 366.) The conversion of a public highway into a toll road

30

466  People ex rel. N. Y. C. & H. R. R. R. Co. *v.* State T. Comm.

Third Department, May, 1923.  [Vol. 205

does not change the character of the road, but only the method of maintaining it; it remains a public highway; and, under a franchise for a toll road, a fee simple title is not vested in the company, but only an easement, which is subject to the easement of the public and the jurisdiction of the public authorities; and this easement reverts to the public on the termination of the franchise. The company takes possession of the right of way to carry out the purposes of its incorporation and of doing such work as may be necessary for the construction and maintenance of the highway. Upon the termination of the franchise of the turnpike company the title does not revert to the abutting owners, but to the public as a public highway relieved of tolls; the company cannot hold it as private property. (38 Cyc. 374 *et seq.; People ex rel. Cayadutta P. R. Co.* v. *Cummings,* 166 N. Y. 110, 115.) There is no evidence of any grant from the turnpike company to the railroad company to cross its highway; it simply crossed. When the rights and franchises of the turnpike company were surrendered to the public there was no reservation to the railroad company of any rights in the public highway.

The relator is maintaining and using this crossing of the public highway. A special franchise has been defined as a right to do something in the public highway, which, except for the grant, would be a trespass. (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Gourley,* 198 N. Y. 486; *People ex rel. Metropolitan St. R. Co.* v. *Tax Comrs.,* 174 id. 417.) The relator company had no right to construct its tracks across this public highway, except it had a grant from some public authority having power to make it. The franchise to cross cannot be acquired by purchase or condemnation. (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Woodbury,* 203 N. Y. 176.) Even had the railroad company been the owner of the fee of the highway, it could not lawfully construct its railroad across that highway, until it obtained a grant from the State. (*New York, L. & W. R. Co.* v. *Roll,* 32 Misc. Rep. 321; appd., *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Woodbury,* 203 N. Y. 174.) If the relator has not such a grant, it is a trespasser. It will be presumed under the circumstances it has such a grant and is not a violator of the law.

After the surrender the road remained, as it had before been, a public highway; and the crossing of this public highway by the railroad company is a special franchise and taxable as such. (Tax Law, § 2, subd. 3; Id. § 2, subd. 6, as renumbered from subd. 3 and amd. by Laws of 1916, chap. 323; *People ex rel. New York Central & H. R. R. R. Co.* v. *Woodbury,* 167 App. Div. 535; affd., 216 N. Y. 651; *People ex rel. Rochester, S. & E. R. R. Co.* v. *Moroney, supra,* 121.)

We hold, therefore, that this crossing by the relator company is subject to the special franchise tax, and that the value of its tangible property should be included in the assessment. The report of the referee and the final orders should be modified accordingly.

Present — H. T. KELLOGG, Acting P. J., KILEY, VAN KIRK, HINMAN and HASBROUCK, JJ.

Final orders modified as follows:

(1) By including in the assessments, before equalization, for the years 1911 to 1915, inclusive, the sum of $20,487; and in each of the years 1916 to 1917 the sum of $32,830, for property of the relator on the Erie canal lands;

(2) By including in the assessments, before equalization, for the year 1908 $13,900; for the years 1909 to 1915, inclusive, $17,200; for the year 1916, $17,900, and for the year 1917 $16,700, for the relator's property at the crossing of Eastern avenue;

As so modified said orders are unanimously affirmed, without costs.

The court disapproves findings six and eight in the referee's report and those parts of the final orders directing a refund of taxes calculated upon the assessments herein allowed.