THE PEOPLE OF THE STATE OF NEW YORK ex rel. CENTRAL HUDSON GAS AND ELECTRIC COMPANY, Respondent, *v.* STATE TAX COMMISSION, Appellant.

SAME, Respondent, *v.* SAME, Appellant.

**Tax — franchise tax — valuation of franchises to carry wires for transmission of electricity over streets and highways by " net earnings rule "— erroneous apportionment of net earnings according to lineal foot user of highways — erroneous allowance as operating expense of amount expended in marketing securities.**

1. Where, by common consent of all of the parties to franchise tax proceedings, the " net earnings rule " has been used in arriving at the valuation of franchises to carry wires for the transmission of electricity over streets and highways, it is error for the Appellate Division, after having determined the net earnings according to this rule, to apportion them according to the relative user of the streets

282 People ex rel. C. H. Gas & El. Co. *v.* Tax Comm.

[247 N. Y. 281]          Points of counsel.          [Feb.,

and highways with the use of private property or privately owned rights of way and so value the franchises according to the lineal foot user. And this is especially so where it does not appear that the relator has at any time expressed a willingness to forego the benefit of a return upon the amount of its investment in easements over private lands. It may not resort, in estimating the value of its special franchises, to the method of apportionment, according to distance, between wires in a highway and those strung, by virtue of an easement, upon land in private ownership and also deduct from the gross, earnings a return upon the capitalized value of the same rights or easements. The burden is on the relator to show, with reasonable accuracy, how much should be deducted from the amount fixed by the assessors. The net earnings, therefore, according to which the special franchises are to be valued, must stand as they were before the attempted apportionment.

2. It was also error to allow as operating expense on account of " amortization of debt, discount and expense," an item representing the actual amount set aside by the relator for amortization of expense incurred in the sale of bonds, such as printing, commissions, lawyers' fees, and like expenses which the company incurred in marketing such securities. A fair return on the tangible property contemplates a sum sufficient to pay such expenses. A deduction from the gross earnings includes not only the operating expenses, but a fair return to the stockholders upon capital invested in the enterprise.

*People ex rel. Central Hudson Gas & El. Co.* v. *Tax Comm.,* 219 App. Div. 227, modified.

(Argued December 16, 1927; decided February 14, 1928.)

Appeal, in each of the above-entitled proceedings, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered January 24, 1927, which modified and affirmed as modified final orders entered upon the report of a referee in favor of the relator in proceedings to review special franchise assessments against the relator for the years 1916, 1917, 1918 and 1919.

*Albert Ottinger, Attorney-General (John M. Farrell* and *Frederic J. Merriman* of counsel), for appellant. The rule of valuation adopted by the Appellate Division was erroneous. (*People ex rel. Jamaica Water Supply Co.* v.

*State Board,* 196 N. Y. 39; *People ex rel. Manhattan R. R. Co. v. Woodbury,* 203 N. Y. 231; *Brooklyn Heights Case,* 146 App. Div. 372; 204 N. Y. 648; *McCardle v. Indianapolis Water Co.,* 272 U. S. 400; *People ex rel. Third Ave. R. R. Co. v. Tax Comrs.,* 136 App. Div. 155; 198 N. Y. 608; *People ex rel. Third Ave. R. R. Co. v. Tax Comrs.,* 157 App. Div. 748; 212 N. Y. 472.) The relator is not entitled to have the full value of the special franchises here under review, as finally determined, equalized because no evidence was submitted tending to show that any of the property assessed upon any of the assessment rolls under review was so assessed at less than full value and, further, a *prima facie* case was established to the effect that all property, excepting special franchises, had been assessed at full value. (*People ex rel. N. Y. C. R. R. Co. v. Woodbury,* 74 Misc. Rep. 145.)

*R. L. von Bernuth, John L. Wilkie* and *Morrell S. Lockhart* for respondent. Only that part of the intangible value in each tax district representing the use and occupancy of the streets therein should be included in the determination of the full value of the special franchise in that district. (*Matter of Cooley,* 186 N. Y. 220; *Matter of Thayer,* 193 N. Y. 430; *Matter of Greene,* 115 Misc. Rep. 704; *Matter of Ripka,* 118 Misc. Rep. 351; *People ex rel. N. Y. C., etc., R. R. Co. v. Gourley,* 198 N. Y. 486; *People ex rel. N. Y. C., etc., R. R. Co. v. Woodbury,* 203 N. Y. 167; *People ex rel. N. Y. C., etc., R. R. Co. v. Woodbury,* 208 N. Y. 421; *People ex rel. N. Y. C., etc., R. R. Co. v. Priest,* 206 N. Y. 274.)

CRANE, J. The facts in these cases are fully set forth in the opinion below. (219 App. Div. 227.) We agree with the Appellate Division except in two particulars.

These are special franchise proceedings relative to the years 1916, 1917, 1918 and 1919. The relator is a corporation organized under the Transportation Corpora-

284  People ex rel. C. H. Gas & El. Co. *v.* Tax Comm.

[247 N. Y. 281]        Opinion, per Crane, J.                    [Feb.,

tions Law (Cons. Laws, ch. 63), engaged in the manufacture and sale of gas, electricity and steam. Its main office is located in Poughkeepsie, and it serves a territory comprising Duchess, Orange and Ulster counties. It has two electric generating stations, one at Poughkeepsie and the other at Newburgh. The transmission and distribution systems of the company are both located in and outside of streets, highways and public places.

The method used in arriving at the valuation of the relator's special franchises for the use of the streets and highways in the various cities and villages was the application of the net earnings rule. (*People ex rel. Jamaica Water Supply Co. v. Tax Commissioners*, 196 N. Y. 39.) It is conceded that the net earnings rule is the formula for determining the special franchise values in question, this being the basis on which the assessments under review were made by the State Tax Department, and on which the cases were tried by both parties.

After having determined, according to this rule, the net earnings, the Appellate Division by a divided court apportioned them according to the relative user of the streets and highways with the use of private property or privately-owned rights of way. As the wires of the company, being its transmission system, carried electricity from its distributing stations over a large territory, its wires or mains crossed private property as well as streets and highways. The Appellate Division has said that the net earnings figured according to this rule represent the whole length of the transmission system, and not the earnings from the franchises only. They have apportioned them by length of wires. By this rule of thumb they have allocated that portion of the net income which they say represents the user of the streets. To quote from the opinion of the Appellate Division:

" The relator's business is to deliver electric current to the buildings of its customers situate in divers places in three different counties. It is carried upon wires

strung over private rights of way owned by the relator, as well as over public streets and public waters. The distance which it is carried over private far exceeds the distance which it is carried over public ways. Every foot of carrying wire 's as essential to relator's business as every other foot. * * *

" It [the franchise tax] is merely a tax upon a property right — the right to cross a street. The right so to cross is no more valuable than the right to cross land privately owned. The public character of the right certainly gives it no added value."

In other words, if a wire crosses the relator's private right of way for 100 feet, and also crosses a public highway for 100 feet, the value of the user is equal, and the net earnings of the company under the net earnings rule must be divided in half.

In my judgment the Appellate Division has misconceived the nature of a special franchise. In no way is it to be compared to a private right of way, or the right to cross private property, whether owned by the company or by strangers. A street crossing franchise consists of the right to cross a street, and to use it, when but for a grant of the right to do so from competent public authority it would be a trespass. The franchise is created by grant, and cannot be acquired by purchase or condemnation. (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Woodbury*, 203 N. Y. 167, at p. 176.) And the franchises so obtained to use or cross streets are not merely to be valued according to the length or extent of the user. Their value depends upon many conditions. Under the rule adopted by the Appellate Division, all the street crossings of the relator would be valued according to the same unit rule. It is the duty if necessary of the State Tax Commission to value each crossing or user, and allocate the franchise tax to the particular tax district. Under the rule adopted here the value would depend upon the lineal foot user. I fail to find any case upholding such a rule. In fact, we

said in *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Gourley* (198 N. Y. 486, 493):

" The valuation of each crossing depends upon various elements; such as its character, the extent to which it is occupied by the relator, the situation and the public use of the street, or way, and other facts bearing upon the advantage to the relator of the use at that point."

Surely the user of wild Adirondack or Catskill mountain lands is not as valuable as the user of a street or highway in a populous city, and the value of a street franchise may be many times more valuable at a congested point than in that part of a city which is sparsely settled. The relator's wires run over private property through vast country districts, and yet the court has held that the value of each lineal foot of such user is as valuable as a foot of wire crossing a street. The mere statement of this proposition to me indicates that the Appellate Division has misconstrued the nature of a franchise, and the rule by which a franchise is valued for assessment and taxation purposes.

The right to use a street is a special privilege. The right to use private property is not a special franchise, and is to be valued as any other property is valued, whether it be corporeal or intangible. Easements of all kinds are intangible, and yet they are and always have been valued as tangible property, or in connection with tangible property. If the relator, in connection with the operation of its distribution plants, had easements of right of way for transporting coal, or easements of water rights, these under the ruling of the Appellate Division would be intangible. Why should they be eliminated in valuing intangible rights, and the rule confined simply to the stringing of wires? The net earnings rule as applied here, and as set forth in the *Jamaica Water Supply Company* case, is a practical method for valuing street franchises. At least it is conceded to be the method to be used here. It has never been adopted for the purpose of valuing easements or other property rights.

The relator, it is said, runs its wires for many miles over its own private right of way. What is meant by its private right of way? If it owns the property, this is valuable, and can be valued, and its value is neither more nor less because of the fact that a wire runs over it. If it is an easement or a right procured from other private owners, this also may be valued. These values, when ascertained, go to make up the present value of the relator's tangible property, upon which it is entitled under the net earnings rule to a fair return. This return is deducted from the gross earnings before net earnings, according to which the special franchise is to be valued, can and will be ascertained. If the private ways and the user of the private way for the stringing of wires has not been thus valued as tangible property, that is the relator's misfortune. It should have been so valued. In no way, however, can it be considered a franchise, or the stringing of its wires over its own property valued equally with the franchise to use a street. We do not mean to say that this net earnings rule is the only way to value franchises such as these in question. There may be other methods of determining values. We do say that as all the parties have accepted this rule, the lineal foot valuation in this instance was erroneous.

The illustrations used by the respondent in its brief are inept, for the reason that they eliminate the value of their private right of way from the value of their tangible property.

In this respect, therefore, we cannot agree with the Appellate Division. The net earnings, according to which the special franchises are to be valued, must stand as they were before the attempted apportionment.

As to one other item also we disagree with the Appellate Division. This is the amount allowed as operating expense on account of " amortization of debt, discount and expense." The item is $4,623 in the 1916 proceeding, and represents the actual amount set aside by the relator

288    People ex rel. C. H. Gas & El. Co. *v.* Tax Comm.

[247 N. Y. 281]    Concurring memorandum, per Cardozo, Ch. J.    [Feb.,

for amortization of that expense incurred in the sale of bonds, representing such expenses as printing, commissions, lawyers' fees, and like expenses which the company incurred in marketing such securities.

In order to arrive at the net earnings under the rule applied, operating expense must be deducted from gross earnings, also, as above stated, a fair return upon all the tangible property of the relator, which of course includes its cash and property in which its capital is invested. If to raise additional capital stockholders had contributed the money, the deduction would consist of a fair return upon this amount. One hundred thousand dollars raised by the stockholders, added to the capital, would at 6 per cent amount to $6,000. However, if instead of putting in the capital themselves, the stockholders had borrowed the full $100,000 — what then? Would the deduction consist of 6 per cent upon this borrowed capital, it being part of the tangible property, and also a deduction as operating expense of the sum it cost to raise the money? This cost might amount to quite a sum, when we consider that in this case it included lawyers' fees. Such a ruling would make it more beneficial in tax assessments for the stockholders to borrow money than to put in the capital themselves. In other words, a fair return on the tangible property contemplates a sum sufficient to pay such expenses as are here designated " debt expense." As stated, a deduction from the gross earnings includes not only the operating expenses, but a fair return to the stockholders upon capital invested in the enterprise.

The orders of the Appellate Division in each proceeding should be modified in accordance with this opinion, and as thus modified affirmed, without costs.

Cardozo, Ch. J. (concurring). As to the first subject discussed in Judge Crane's opinion, I concur in the result.

Cases can be imagined in which the value of a special franchise will best be estimated by an apportionment according to distance between the wires in the highway and those strung, by virtue of an easement, upon land in private ownership. Very plainly, however, the taxpayer, resorting to such a method, may not also deduct from the gross earnings a return upon the capitalized value of the same rights or easements. This would be in effect to allow a single credit twice. I cannot find that the relator has at any time expressed a willingness to forego the benefit of a return upon the amount of this investment. Indeed, I have been unable to ascertain from the record what the amount of such investment is as contrasted with the investment in property more typically tangible, *i. e.*, in power houses and lands. While one allowance stands, no other may be made. We are not dealing with a case where the assessors have adopted a false theory of assessment, for by common consent the net earnings rule was treated as the one to be applied. If there was error at all, it was in the application of the rule rather than in the rule itself. In such circumstances the burden was on the relator to show with reasonable accuracy how much should be deducted from the amount fixed by the assessors. This it has not done. The assessment, therefore, stands (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Priest,* 206 N. Y. 274; *People ex rel. Kohlman & Co.* v. *Law,* 239 N. Y. 346).

I am in accord with the opinion as to the other matters in controversy.

POUND, ANDREWS, LEHMAN and O'BRIEN, JJ., concur with CRANE, J.; CARDOZO, Ch. J., concurs in result with memorandum in which all concur, except KELLOGG, J., not sitting.

Ordered accordingly.