debtor has elected his remedy, and ought not to be permitted to continue this proceeding in order to enable him to obtain evidence in aid of his creditors' action in Washington. For these reasons Mr. Albright declined to appear before the referee and submit to a further examination, and thereupon a motion is now made by counsel for the judgment creditor for an order requiring such appearance and submission to an examination.

The authorities sustain the judgment creditor in this application. It is held that the remedies provided by supplementary proceedings and by judgment creditors' actions are concurrent, and that the judgment creditor may prosecute either or both until satisfaction of the judgment, and that the judgment creditor does not waive his right to examine in supplementary proceedings by bringing a creditors' action. In re Bacheller De Ponce De Leon, 69 N. Y. Supp. 242; In re Sickle, 52 Hun, 527, 5 N. Y. Supp. 703; Schloss v. Wallach, 16 Abb. N. C. 319. Note Schloss v. Wallach, 38 Hun, 638; · Id., 102 N. Y. 683. The right of the judgment creditor for a further examination of Mr. Albright appears plain.

Let an order be entered directing such an appearance and submission to an examination on a day to be mutually agreed upon, and if such a day cannot be agreed upon the court will fix the date in the order to be entered herein.

─────────────

(120 App. Div. 528)

LEFFMANN v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. June 28, 1907.)

1. EMINENT DOMAIN—STREET RAILROADS—CHANGE TO ELEVATED ROAD.
    If a street railroad has as against an abutting landowner a prescriptive right only, it cannot change from the surface to an elevated structure without compensating him for the added interference with his easement of light, air, and access.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 304–308.]

2. STATUTES—TITLE—SUBJECT.
    The title of Laws 1855, p. 854, c. 475, reciting in detail its purpose to be the widening and extension of an avenue and the ratification of an agreement between a railroad company, a city, and another providing for the cession of railroad lands to the city in exchange for an exclusive right to occupy a strip in such avenue, was not violative of Const. 1846, art 3, § 16, as embracing more than one subject; the agreement being an essential part of the scheme of improvement.

3. EMINENT DOMAIN—STATUTES—CONSTRUCTION.
    Statutes authorizing the taking of land may not be extended by implication, and no greater right is acquired than is necessary to satisfy the purpose of the statute.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 30, 141, 142.]

4. SAME.
    Though an abutting landowner was not bound by a tripartite agreement between a city, a street railroad company, and its lessor, whereby railroad lands were ceded to the city, and the company acquired an exclusive right to use a strip of land in an avenue to be improved, the owner was bound by proceedings taken pursuant to an act, providing that the

improvement should be made, and the proceedings of the commissioners under the act should be subject and in conformity to the terms of the agreement.

5. SAME.

Where a perpetual right to the exclusive use of a strip in an avenue for railroad purposes was acquired by condemnation proceedings many years ago, it must be assumed that the damages awarded an abutting landowner included the value of the premises actually taken and the damages resulting to the residue, including those to be sustained by reason of the use to which the portion taken was to be put, and such damages could not be lessened by the fact that there might be a possibility of a reverter, and hence, when the company was compelled by the Legislature to elevate its tracks, it took no property of such abutting landowner's remote grantee, since the former award must be presumed to have included the damage resulting from the change.

Appeal from Special Term, Kings County.

Action by Ella H. Leffmann against the Long Island Railroad Company. Defendant appeals from a judgment for plaintiff (93 N. Y. Supp. 647). Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, HOOKER, and MILLER, JJ.

Edward M. Shepard (George W. Wingate and James W. Treadwell, on the brief), for appellant.

Alfred E. Sander (Charles S. Taber, on the brief), for respondent.

MILLER, J. The plaintiff is the owner of premises situate on the southeast corner of Ralph and Atlantic avenues, borough of Brooklyn, and seeks to restrain the maintenance by the defendant of its viaduct structure on Atlantic avenue in front of her premises, and the running of its trains thereon. The case turns on the defendant's right to use the so-called 30-foot strip in the center of Atlantic avenue. If it had, as against the plaintiff, a prescriptive right only, it could not change from the surface to an elevated structure without compensating the plaintiff for the added interference with her easements of light, air; and access. Lewis v. N. Y. & Harlem R. R. Co., 162 N. Y. 202, 56 N. E. 540; Muhlker v. N. Y. & Harlem R. R. Co., 197 U. S. 544, 25 Sup. Ct. 522, 49 L. Ed. 872.

The defendant has had exclusive possession of said 30-foot strip ever since the widening and extension of Atlantic avenue in 1860. By chapter 394, p. 433, of the Laws of 1896, the mayor of the city of Brooklyn was authorized to appoint a commission to examine into and report a plan for the relief and improvement of said avenue. By chapter 499, p. 763, of the Laws of 1897, provision was made for said improvement and for the removal of the defendant's railroad from the surface. The result of the improvement is that, instead of having the exclusive use of the surface of the 30-foot strip, the defendant's road is partly in a concealed subway and partly on a viaduct, and the surface of the street is opened to the public, so that the plaintiff's easement of access is materially improved, and, as the act requires that some other motive power than steam be used in the movement of passenger trains, the plaintiff's easement of air, if not of light, must have been to some extent improved also. The legislation pursuant to which

said improvement was made at the joint expense of the defendant and the city is not essentially different from that directing the improvement of Park avenue, in the borough of Manhattan, out of which a class of litigation arose of which the Lewis and Muhlker Cases, supra, are now controlling authorities. In determining the defendant's rights, it is not necessary to go back of the so-called "tripartite agreement," made in 1855, between the defendant, the Brooklyn & Jamaica Railroad Company, its lessor, and the city, as it is not disputed that at that time said lessor was the owner in fee of its roadbed. Atlantic avenue, from Flatbush avenue or Gowanus Road to Bedford avenue, was 70 feet wide, and contiguous to it on the south was the railroad strip 50 feet wide. There was a proposed extension of Atlantic avenue east of Bedford called Schuyler street. The railroad strip crossed Atlantic avenue diagonally west of Franklin avenue and continued to the city line between the proposed Schuyler street and Fulton avenue. Said tripartite agreement contemplated the extension of Atlantic avenue to the city line and the widening of the avenue to a width of 120 feet; the middle 30 feet to be used for railroad purposes, and the outer 45 feet on each side for highway purposes. It provided for the cession of the railroad lands to the city, and for the sale of so much thereof as were not within the lines of the new street so widened and extended, to pay the expenses of the opening. We are now concerned only with the second clause of said agreement, which dealt with the cession of the railroad lands east of Franklin avenue, and the rights the defendant was to have in the 30-foot strip in the center of Atlantic avenue, concerning which said contract contained the following provision, viz.:

"Provided, however, and upon this express condition, that the parties of the first and second parts shall forever have the exclusive right to use and occupy a strip or space of the width of thirty feet in the center of said Atlantic avenue as so extended and in the center of Schuyler street as thus widened, from the intersection of Atlantic avenue to the easterly line of the city as thus widened, for the purpose of railroad tracks and turn-outs, and the running of locomotives and cars thereon, without interruption or molestation."

By chapter 475, p. 854, of the Laws of 1855, said agreement was ratified and confirmed, and provision was made for carrying out said proposed public improvement and for the appointment of commissioners to estimate and assess the expenses thereof and the amount of damages and benefits to be sustained and derived therefrom by property owners, and all provisions of law relating to street opening proceedings were made applicable after the appointment of commissioners. Pursuant to said agreement and the confirmatory act, the railroad land was deeded to the city, and commissioners were appointed by an order of the court on the petition of the city, which set forth the act of 1855 and the receipt and acceptance by the city of a deed of the lands mentioned in it. The commissioners proceeded to estimate and assess the amount of damages and benefits, and their report was, except in certain respects not now material, confirmed by an order which recited that the proceedings were had under and by virtue of said act of 1855. The regularity of the proceedings is conceded. The plaintiff derives title from one James De Bevoise, who owned the plaintiff's present lot,

and the south half of the 120-foot strip opened in front thereof as aforesaid. Her chain of title originates in a deed to Mary E. Holbrook by the heirs of said De Bevoise, dated May 1, 1860. In the opening proceeding substantial awards were made the heirs of said De Bevoise for the parcels taken, and a small sum was assessed for benefits upon the parcel now owned by the plaintiff, so that said heirs received as damages a sum largely in excess of the amount assessed for benefits upon the parcel retained. The deed from Holbrook in plaintiff's chain of title contains the following recital:

"Subject, however, to such rights as the city of Brooklyn and the Brooklyn & Jamaica Railroad Company may have acquired in portions of said land for opening or widening streets, or for railroad purposes."

The plaintiff's original deed described her property as bounded on the north by the southerly side of Atlantic avenue. By a correction deed, made after this suit was begun, the plaintiff's grantor also conveyed all his right, title, and interest in and to Atlantic avenue.

The plaintiff attacks the validity of the confirmatory act of 1855, alleging that it violates section 16 of article 3 of the Constitution of 1846, in that it is a local act, and applies to more than one subject, to wit, (a) the opening of a highway, and (b) the ratification of an illegal contract; but we think the act dealt with but a single subject, to wit, authorization of a public improvement. The conveyance of the railroad strip to the city in exchange for the right to occupy a portion of the new street was but an incident of the scheme of improvement. In obedience to the constitutional requirement, the title of the act recited in detail its purpose to be the widening and extension of Atlantic avenue and the ratification and confirmation of said agreement; but the purpose of the act was the improvement of Atlantic avenue, and the fact that the title was more specific than was necessary does not show that the act embraced more than one subject within the meaning of the Constitution. Parfitt v. Furguson, 159 N. Y. 111, 53 N. E. 707, and Cahill v. Hogan, 180 N. Y. 304, 73 N. E. 39, relied upon by the respondent, are not in point. The first case cited passed upon a statute dealing with two separate and independent subjects, and the other case dealt with a statute which did not sufficiently express its purpose in its title. While the precise point does not appear ever to have been discussed in any of the litigation growing out of the defendant's occupancy of said 30-foot strip and of the different changes of motive power, the courts have never questioned, and many times have assumed the validity of, said act of 1855. See People v. L. I. R. R. Co., 9 Abb. N. C. 448, affirmed 30 Hun, 510; People v. Brooklyn F. & C. I. R. Co., 89 N. Y. 75–84.

The plaintiff asserts that the proceeding instituted under the act of 1855 was a street opening proceeding, pure and simple, in which only a public easement was acquired by the city, and that the defendant was a trespasser from the moment it began to occupy the 30-foot space; whereas, the defendant asserts that said proceeding was a condemnation proceeding in which the 30-foot strip was acquired exclusively for railroad purposes, and the two outer 45-foot strips were acquired for highway purposes. The proceeding was instituted pursuant to the au-

thority, and to accomplish the purpose of, said act of 1855, and the trial court found that it was begun, maintained, and consummated under and pursuant to said act of 1855, and that all the strips of land acquired thereunder were acquired for the purposes and in the manner contemplated by said act and the tripartite agreement thereby confirmed; so, whatever it be styled, we must start with the proposition that it was taken for the purpose of acquiring certain rights for public use, and, to ascertain what those rights were, we must look to the statute authorizing it. There can be no doubt that the primary object of the statute was the improvement, widening, and extension of Atlantic avenue. The cession of the railroad lands to the city in exchange for the right to the exclusive use for railroad purposes of the 30-foot strip in the center of the improved street was an essential part of said scheme of improvement, and the Legislature plainly indicated its intention that in the proceedings authorized by it all property rights necessary to the consummation of said scheme should be acquired. It is true that statutes authorizing the taking of land are not extended by implication, and that no greater right is acquired than is necessary to satisfy the purpose of the statute, and for this reason, in the absence of a statute providing for the taking of a fee, it was always held in street opening proceedings that a public easement only was acquired; but such statutes are not to be so construed as to defeat the evident purpose of the Legislature (In re N. Y. & H. R. R. Co. v. Kip et al., 46 N. Y. 646, 7 Am. Rep. 385), and the nature of the right acquired depends upon the intention of the Legislature to be deduced from the act authorizing the condemnation (Brooklyn Park Com. v. Armstrong, 45 N. Y. 234, 6 Am. Rep. 70).

The fact that the provisions of the charter respecting street opening proceedings were made applicable to this proceeding, after the appointment of commissioners, does not militate at all against the proposition that the proceeding was taken pursuant to the authority of said act of 1855. It is true, as the respondent contends, that the plaintiff's remote grantors were not bound by the tripartite agreement, not being parties to it; but they were bound by the proceeding taken pursuant to the act of 1855, and said act expressly provided that the improvements were to be made, and the proceedings of the commissioners under the act were to be had, subject to the terms of said agreement, and in conformity thereto. It is immaterial for the purposes of this decision whether the defendant acquired the fee or an easement merely. I am personally inclined to the view that an easement only was obtained, because that was all that was necessary to accomplish the purpose and object of the act; but, in any view, it is plain that a right was acquired to the exclusive use of the 30-foot strip for railroad purposes forever, and it must be assumed that the damages awarded the De Bevoise heirs included the value of the premises actually taken and the damages resulting to the residue, including those to be sustained by reason of the use to which the portion taken was to be put (South Buffalo R. Co. v. Kirkover, 176 N. Y. 301, 68 N. E. 366), and such damages could not be lessened by the fact that there might be a possibility of reverter (Miner v. N. Y. C. & H. R. R. R. Co., 123 N. Y. 242, 25 N. E. 339).

Therefore, when, in obedience to the legislative mandate, the defendant removed its tracks from the surface of the 30-foot strip for the purpose of a public improvement, it took no property of the plaintiff, because the award to her remote grantors in the opening proceedings must be presumed to have included the very damages she has now recovered. Cassidy v. Old Colony R. R. Co., 141 Mass. 174, 5 N. E. 142; Conklin v. N. Y. Ont. & West Railway Co., 102 N. Y. 107, 6 N. E. 663; Bennett v. L. I. R. R. Co., 181 N. Y. 431, 74 N. E. 418. In the Bennett Case, the elevated structure was built to enable the defendant to connect with an elevated road. In the case at bar, the viaduct was constructed to make possible a public improvement. In the Bennett Case the defendant owned the fee; but the grant was made to its predecessor for railroad purposes only, and it was held that the right of the defendant to keep pace with the increasing demands of the time must be deemed within the terms of the conveyance to it. It surely cannot matter that the right to maintain its road upon the premises in question was obtained by proceedings in invitum, and not by grant. The defendant's road is still a steam surface road, and the case of P. R. T. Co. v. Dash, 125 N. Y. 93, 26 N. E. 25, 10 L. R. A. 728, has no application. Surface roads have to make use of structures elevated above the surface of the ground and of tunnels beneath the surface, and it must have been assumed, whether its right was obtained by grant or by proceedings in invitum, that changes might be necessary, either because of new demands upon its capacity, or of the needs of public improvements; and in either case the property owner must be deemed to have been compensated once and for all time for all such changes.

It is impossible to distinguish this case in principle from the case of Conabeer v. N. Y. C. & H. R. R. R. Co., 156 N. Y. 474, 51 N. E. 402. Unlike the other Park avenue cases, in that case the grant to the railroad company for railroad purposes was made before the rights of the city or the plaintiff's remote grantor intervened. The court there deemed it immaterial where the fee was, because the defendant had obtained the right from the original owner to maintain its road, and therefore it was held that the defendant in obeying the legislative mandate took no property from the plaintiff. In the case at bar, we deem it immaterial who owns the fee of the 30-foot strip. If the defendant obtained a prescriptive right only, the plaintiff could recover for the interference with her easements of light, air, and access, irrespective of whether she owned the fee or was an abutter merely. If, however, the defendant obtained the right to the exclusive use forever for railroad purposes of the 30-foot strip, then the plaintiff, though owning the fee, cannot complain of the changes made necessary by needed public improvements, required by the Legislature to be made. We have decided to place our decision upon the latter ground.

The judgment should be reversed.

Judgment reversed, and new trial granted; costs to abide the final award of costs. All concur.