PEOPLE ex rel. LONG ISLAND R. CO. v. STATE BOARD OF TAX
        COM'RS (CITY OF NEW YORK, Intervener).

(Supreme Court, Appellate Division, Second Department.  January 26, 1912.)

1. TAXATION (§ 151*)—ASSESSMENT—"SPECIAL FRANCHISE"—USE OF STREET
     BY RAILROAD.
        Relator street railroad company has the exclusive right in the nature
     of an easement to occupy forever a strip within a street with its rail-
     road tracks for running cars thereon.  Tax Law (Laws 1896, c. 908)
     § 2, subd. 3, as amended by Laws 1899, c. 712, provides that the terms
     "land, real estate," etc., include all structures erected upon or affixed
     to land, all surface or elevated railroads, including the value of all
     franchises or permissions to construct and operate the same on any
     streets; all railroad structures, tracks, etc., permitted or authorized to
     be laid upon any street, and that a franchise specified herein shall be
     known as a "special franchise," for the purpose of taxation.  Held, that
     relator's right to maintain and operate its road within the street was
     not a "special franchise," within the statute.
        [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 151.*
        For other definitions, see Words and Phrases, vol. 7, p. 6576.]

2. TAXATION (§ 151*)—RAILROAD FRANCHISES.
        The right of a railroad company to operate its road upon a right of
     way, the soil of which is owned by it, is not a special franchise subject
     to taxation as such, though it be within the lines of a street.
        [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 151.*]

Appeal from Special Term, Kings County.

Proceedings by the People, on the relation of the Long Island Rail-
road Company, against the State Board of Tax Commissioners, in
which the City of New York intervened.  From an order setting aside
an assessment of relator's property for a special franchise, defendant
and intervener appeal.  Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR,
WOODWARD, and RICH, JJ.

Curtis A. Peters (Addison B. Scoville and William A. McQuaid,
on the brief), for appellants.

Alfred A. Gardner (Edgar J. Kohler and Joseph F. Keany, on the
brief), for respondent.

BURR, J.  [1] The question to be determined in this case is wheth-
er the relator was properly assessed in the year 1906 for a special fran-
chise, by reason of its occupation for railroad purposes of a strip of
land 30 feet in width, lying between the northerly and the southerly
lines of Atlantic avenue, in the borough of Brooklyn, and extending
from a point 252 feet east of Franklin avenue to Stone avenue, which
was formerly the easterly boundary line of the city of Brooklyn.  The
nature of the interest of the relator, and of those through whom it
claims, in the said strip of ground, has been the occasion of abundant
litigation.  It was considered in Matter of Long Island R. R. Co.,
189 N. Y. 428, 82 N. E. 443, which was an application for the ap-
pointment of commissioners to determine whether sidings and turn-
outs should be constructed in aid of a trolley line which the petitioner

therein claimed the right to construct and operate on the surface of Atlantic avenue; in the case of Leffmann v. Long Island Railroad Co., 120 App. Div. 528, 105 N. Y. Supp. 487, affirmed 197 N. Y. 513, 90 N. E. 1160, upon the opinion of Mr. Justice Miller who wrote for this court, which was an action brought by an abutting property owner to restrain the defendant therein from maintaining a viaduct and running trains thereon, within the confines of said 30-foot strip; and again in Long Island R. R. Co. v. City of New York, 199 N. Y. 288, 92 N. E. 681, which was an action to restrain the defendant the city of New York from entering upon said strip of ground for the purpose of removing from the surface thereof certain tracks, curb-. ing,. and other structures laid or erected thereon by the said railroad company, after the construction of another road partly above and partly below the surface of said street. It is not necessary in this opinion to set forth at length, as bearing upon the rights of the parties to this proceeding, the history of the development and improvement of Atlantic avenue, the effect of the tripartite agreement entered into on April 10, 1855, between the Brooklyn & Jamaica Railroad Company, the Long Island Railroad Company, and the city of Brooklyn, intended to further its accomplishment, the act of the Legislature, passed April 13th of the same year (Laws 1855, c. 475) intended to ratify and legalize this agreement, the conveyances made subsequently thereto, the proceedings in connection with the widening and extension of Atlantic avenue instituted in the latter part of 1855 and resulting in a final order confirming the report of the commissioners in 1860, the act of 1897, familiarly known as the Atlantic Avenue Improvement Act (Laws of 1897, c. 499), or the subsequent act which, although general in form, in fact related to the situation then existing upon said avenue (Laws of 1899, c. 497). These have been fully considered in the cases above referred to. It must now be deemed to be settled that the interest of relator in said strip is accurately described as "the exclusive right to use and occupy the 30-foot strip forever for the purpose of railroad tracks and turnouts and running locomotives and cars thereon without interruption or molestation," which right is in the nature of an "easement." Long Island R. R. Co. v. City of New York, supra.

The tax law, as it was when this assessment was made, provided as follows:

"The terms 'land,' 'real estate,' and 'real property,' as used in this chapter, include the land itself above and under water, all buildings and other articles and structures, substructures and superstructures, erected upon, under or above, or affixed to the same; * * * all surface, underground or elevated railroads, including the value of all franchises, rights or permission to construct, maintain or operate the same in, under, above, on or through, streets, highways, or public places; all railroad structures, substructures and superstructures, tracks and the iron thereon; branches, switches and other fixtures permitted or authorized to be made, laid or placed in, upon, above or under any public or private road, street or ground, * * * A franchise, right, authority or permission specified in this subdivision shall for the purpose of taxation be known as a 'special franchise.'" Tax Law (General Laws, c. 24 [Laws of 1896, c. 908]) art. 1, § 2, subd. 3, as amended by Laws of 1899, c. 712.

We think that the right which relator has to construct, maintain, or operate its road on said strip of land is not such a right as was contemplated by the amendment.to the tax law, providing for the taxation of a special franchise (Laws of 1899, c. 712). The object of this amendment was to reach and subject to taxation "property scattered all over the state worth nearly $200,000,000, which was not taxed at all and had never been taxed." · People ex rel. Met. St. Ry. Co. v. Tax Com'rs, 174 N. Y. 417, on page 437, 67 N. E. 69, on page 73 (63 L. R. A. 884, 105 Am. St. Rep. 674). An example of the existing evil which this amendment sought to remedy is to be found in a case arising in this department in 1897 (People ex rel. Brooklyn R. R. Co. v. Neff, 19 App. Div. 590, 46 N. Y. Supp. 385, affirmed on opinion below 154 N. Y. 763, 49 N. E. 1102). It appeared in that case that the capital stock of relator, a street surface railroad company, was of the par value of $12,000,000. Its actual value, determined by the selling price of the stock in the market, was over $21,000,000. Its bonded and other indebtedness was a little less than $7,000,000, and the assessed value of its real estate, including its tracks, was a little more than $5,000,-000. The actual value of its tangible assets was a little in excess of $8,000,000. Although its capital stock was selling at 180, and although it had leased its road and all its property to another corporation, which had agreed to pay as rental, over the taxes, etc., 10 per cent. of the capital stock of the company, and also the interest on its bonds, under the system of assessment then prescribed and permitted by law this highly prosperous road stood more than four millions below the point at which it would be liable for any assessment upon its personalty. The gross injustice of such a result led to an earnest effort to devise some method by which. such an assessment for the purposes of a general tax could be successfully made. The effort failed. The opinion in this court was written by Mr. Justice Cullen,. then a member of this court and now the Chief Judge of the Court of Appeals. He said:

"It is insisted that the statement that the company has only $1,150,000 assets in excess of its liabilities is not to be credited in the face of the fact that the market value of the whole stock exceeds $21,000,000. * * * There is undoubtedly great force in this argument, and it would be unanswerable were there not borne in mind the distinction between the two kinds of assets. If all the assets of this company were only $1,150,000 it would be incredible that any amount of business skill, or any peculiar use of those assets, would make the stock of the company worth in excess of $20,000,000. But there is another asset of the company which it has not returned to the assessors, and which, as we have already seen·under the authorities, the law does not require it to return; that is, the franchise of maintaining and operating railroads on some 60 miles of the streets of the city of Brooklyn. This asset may be of sufficient value to warrant even a greater market price for the stock of the relator than that which now obtains."

Shortly thereafter, the amendment to the tax law, above referred to, was enacted. The language of the tax statute, strictly and literally construed, as well as isolated expressions in the various opinions which have been written upon the subject of the special franchise tax, might seem to justify the action of the State Board of Tax Commissioners in the case at bar. Thus in People ex rel. Met. St. Ry. Co. v. Tax.

Com'rs, supra, the court say (174 N. Y. 435, 67 N. E. 72, 63 L. R. A. 884, 105 Am. St. Rep. 674):

"When a right of way over a public street is granted to such a corporation, with leave to construct and operate a street railroad thereon, the privilege is known as a special franchise, or the right to do something in the public highway, which, except for the grant, would be a trespass."

And again (174 N. Y. 440, 67 N. E. 74, 63 L. R. A. 884, 105 Am. St. Rep. 674), "it is a mere privilege to do something in public streets and places not permitted to citizens generally," and again (174 N. Y. 441, 67 N. E. 74, 63 L. R. A. 884, 105 Am. St. Rep. 674), "a railroad cannot occupy a street without a special franchise," and again (174 N. Y. 443, 67 N. E. 75, 63 L. R. A. 884, 105 Am. St. Rep. 674), "the franchise is the right to put something in the highway and use it there." In People ex rel. Hudson & Manhattan Railroad Co. v. State Board of Tax Commissioners, 203 N. Y. 119, 96 N. E. 435, the court say:

"The right to enter the streets is under the statute unquestionably a special franchise."

But this language must be construed with reference to the facts existing in the cases then under consideration. We think that it should be limited to a case where the privilege to occupy the street or highway results solely from permission by the proper authorities, and where the railroad company has no estate or interest in the land itself over which it is operating its road. There may be a "right of way" owned by a railroad corporation and by reason thereof it may be authorized to construct and operate a railroad over land which subsequently becomes a public street, which right will not necessarily be a special franchise within the meaning of the tax law. A railroad company may possibly occupy land which is within the boundaries of an existing public street, and do so by virtue of a right therein independent of mere permission to use the street. In such case it may not be liable to be assessed as for a special franchise. As was said in People ex rel. Met. St. Ry. Co. v. Tax Com'rs, supra:

"The statute should be considered in the light of the circumstances existing when it was passed, which were extraordinary and unprecedented."

[2] When a railroad is maintaining and operating its road upon its own right of way, and what is done therein is done by virtue of the ownership of the soil or of some interest therein, even although this right of way may be included within parallel lines upon either side thereof, constituting the boundaries of a street or highway, this right is not a special franchise, subject to taxation. This seems to be clearly within the principle established in People ex rel. Hudson & Manhattan Co. v. Tax Com'rs, supra, and People ex rel. N. Y. C. R. R. Co. v. Woodbury, 203 N. Y. 167, 96 N. E. 431. In the latter case it was said:

"A street crossing franchise consists of the right to lay tracks across a street and use them, when but for a grant of the right to do so from competent public authority it would be a trespass." But "if, after they have their rights of way secured over private land, a public highway is laid across the

tracks, while there is a crossing it is not a crossing made by the railroad or through public favor so far as the railroad is concerned."

If it possesses its right of way by purchase or as matter of right, it does not hold it as matter of "public favor." It may be an anomalous situation that a railroad corporation should hold a private and exclusive right of way through a public thoroughfare, but the situation with regard to Atlantic avenue and the improvement thereof is an anomalous one, and must be dealt with accordingly. It is doubtful if it has a parallel anywhere within the state. Prior to 1855 we find relator or its predecessors in interest owning a private right of way to the north of the then existing line of a projected street as laid down on the map, but not actually opened. We find it entering into an agreement with the city of Brooklyn, by means of which, in order to enable the latter to construct "a noble avenue 120 feet wide" (Matter of Long Island R. R. Co., supra), it ceded to the city the land which it owned in fee, receiving as a consideration therefor "forever * * * the exclusive right to use and occupy a strip or space of the width of thirty feet" in the center of said avenue as widened and extended. The avenue from the very moment of its construction was "subject to an easement for railroad purposes over the central portion." Matter of Long Island R. R. Co., supra. Relator's right to the use of this portion of the street was not by public favor, but because of its ownership of an easement therein, acquired for a valuable consideration, pursuant to contract and legislative act, contemporaneously with the construction of the street itself, and as a part of the general scheme therefor. It was a right founded upon an interest in the land itself. If this is not the case of a street coming to a railroad, as in People ex rel. N. Y. C. R. R. Co. v. Woodbury, supra, neither is it the case of a railroad coming to an existing street. Both the street and the railroad easement came into existence together. No additional right was conferred upon the railroad by the construction of the street. On the contrary, in connection with such construction it acquired a right of way therein only by way of easement, while surrendering and ceding a right of way in fee. Nor is this a case where relator is seeking to evade its just liability to taxation. Previous to the passage of the special franchise amendment, for a long period of years it had been taxed upon its property rights in this strip and had discharged its obligations in connection therewith.

We deem the action of the State Board of Tax Commissioners erroneous, and the order vacating and setting aside the assessment of the relator as for a special franchise should be affirmed, with $10 costs and disbursements. All concur.