JENKS, P. J., THOMAS, STAPLETON and PUTNAM, JJ., concurred.

Judgment of the Court of Special Sessions reversed, and the demurrer for insufficiency overruled.

---

THE PEOPLE OF THE STATE OF NEW YORK ex rel. NEW YORK AND ROCKAWAY BEACH RAILWAY COMPANY, Appellant, v. THE STATE BOARD OF TAX COMMISSIONERS, Respondent.

THE CITY OF NEW YORK, Intervenor, Respondent. Four Proceedings. (Taxes of 1908, 1909, 1910, 1911.)

Second Department, June 20, 1913.

Tax — certiorari — petition — waiver of defect — taxation of intangible right of railway to maintain track across highway — presumption that assessment by State Board of Tax Commissioners is correct.

By making a return to a writ of certiorari, brought to review the assessment of a special franchise, submitting the questions involved to the court upon the merits, without objecting to the failure of the petition to allege the extent of overvaluation as required by section 290 of the Tax Law, the respondent waives such defect.

Return of the State Board of Tax Commissioners, showing the matters considered in arriving at the value of the intangible right of a railway company to maintain its tracks across highways examined, and *held*, that their determination should not be disturbed.

There is a presumption that the assessment made by the State Board of Tax Commissioners is correct, and it should not be overthrown without evidence that it is erroneous.

The intangible right of a railway company to maintain its tracks across highways should not be assessed as a special franchise where occupation by the railroad was prior to that by the highway.

APPEALS by the relator, the New York and Rockaway Beach Railway Company, from four final orders of the Supreme

Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 13th day of February, 1913, reducing assessments against the relator for special franchises.

*Joseph F. Keany* [*Alfred A. Gardner* of counsel], for the appellant.

*Archibald R. Watson, Corporation Counsel* [*Curtis A. Peters* and *Addison B. Scoville* of counsel], for the City of New York, respondent.

*Thomas Carmody, Attorney-General* [*William A. McQuaid* of counsel], for the defendant, respondent.

Orders affirmed, with ten dollars costs and disbursements, on the opinion of BLACKMAR, J., at Special Term.

JENKS, P. J., BURR, RICH and STAPLETON, JJ., concurred; THOMAS, J., not voting.

The following is the opinion of the Special Term:

BLACKMAR, J.:

These are four writs of certiorari brought to review the assessments for the purpose of taxation of certain special franchises of the relator for the years 1908, 1909, 1910 and 1911. The relator's road is about thirteen miles in length, extending from Glendale station to Rockaway Beach. It crosses a number of highways in the county of Kings, and the right or permission to cross such highways constitutes the special franchises which are the subject of the assessment. Several of the assessments must be held illegal in accordance with the decision of the Court of Appeals in *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Woodbury* (203 N. Y. 167), because the occupation by the railroad of the *locus in quo* was prior to that by the highways, and the parties have so stipulated. They have also stipulated as to the value of the tangible property belonging to the relator on each of the highway crossings. The dispute relates to the value of the intangible right to maintain its track across the highways.

498   People ex rel. N. Y. & R. B. R. Co. v. Tax Comrs.

Second Department, June, 1913.          [Vol. 157.

The counsel for the People of the State of New York and for the City of New York, as an intervenor, claim that this question cannot be raised under the present writs of certiorari because the petitions therefor do not contain sufficient allegations. Section 290 of the Tax Law* provides that a petition for a writ of certiorari, if it is claimed that the assessment is erroneous for overvaluation, must state the extent of such overvaluation. Such allegations are wanting in these petitions, and if a motion had been made to quash the writs, the petitions would probably have been held to be insufficient; but the defendants did not move to quash the writs but made return thereto as though the petitions were sufficient. The defect was one which might easily have been cured by amendment, and I think that making return to the writs and submitting the questions involved to the court upon the merits constitutes a waiver of such defect.

It seems to me very difficult to prescribe any rule by which the value of the right of a railroad to cross a highway can be appraised. The earning capacity rule is obviously incapable of application. There is no market price for such a right. It is not a species of property which can be manufactured so that the cost of production is evidence of its value. But the statutes of the State have imposed a tax upon these special franchises, and have referred the determination of their value to the State Board of Tax Commissioners. In the case of *People ex rel. Metropolitan St. R. Co.* v. *Tax Commissioners* (174 N. Y. 417) the Court of Appeals stated that one of the reasons why the assessment of this species of property, for the purpose of taxation, was vested in the State Board instead of being left to the localities was because the valuation of this "new kind of property, intangible, invisible and elusive, but of great value, would be attended with peculiar difficulties, which would require a degree of knowledge and skill not possessed by local assessors, but belonging only to experts who had long and carefully studied the subject of taxation in all its varied aspects." According to the return of the defendants thousands of special franchises of the nature of these under consideration are

* Consol. Laws, chap. 60 (Laws of 1909, chap. 62), § 290.— [Rep.

assessed by them every year.   They have adopted a method of making such assessments and of reducing them to uniformity throughout the State, and the assessments here attacked are made according to such method.   The board returns that in arriving at the value of such intangible right it took into consideration the population of the municipality where the same is located; the character of the crossing itself, whether the railroad crosses at grade, overhead or below; the relative importance of the street with reference to its use by the public at the place of crossing; the amount of traffic thereover by the railroad and the resulting interference with the use thereof by the public; the character of the trackage, whether by through train service or for switching purposes; the land values in the locality in which the crossing is located; the general financial condition of the company bearing upon the question of whether or not it is a paying railroad or otherwise, and the general information of the members of the board as to the prices paid to and received by municipalities for the right or privilege of generally similar occupancies.   The board further returns that for the sake of securing uniformity in its method of assessment it has grouped crossings into classes according to the population of the villages and cities in which they are located.   It has then taken certain crossings as standards with which other crossings in the several groups are compared.   It has then established thirty classes of crossings within each group, dependent upon the importance of the streets with reference to their use by the public at the places of crossing and the traffic and use thereof by the railroad company.   These groupings and classifications are brought together in tables which are called "application tables," and they are used to secure uniformity of assessment throughout the State.   In this way the State Board has discharged the duties imposed upon it by the statute and has reached its conclusion as to the value of the intangible right in each of the crossings in question.

The relator attacks this method of valuation and presents to the court its theory upon which the valuation should be made. The plan of the relator is to determine, from the valuation of the surrounding property, the land value of that portion of the highway crossed by the railroad, then to ascertain the time

during which the highway is obstructed by the passage of trains, and then to determine the value of the franchise by taking that proportion of the land value which the time occupied by passing trains in any one day bears to twenty-four hours. The theory, therefore, of the relator is that the only proper method of assessing the value of these special franchises is based upon the land value of the crossing, and this only for the time during which the crossing is occupied by passing trains.

It seems to me obvious that all the elements of value recited in the return of the Commissioners are proper to be taken into consideration; but the theory of the relator excludes them all, except land values and the time occupied by passing trains.   I cannot sustain this theory of the relator without determining that all the other elements of consideration, as set forth in the return, are of no value.   The relator does not take into consideration the population of the municipality where the crossing is located; the importance of the street with reference to its use by the public; the financial condition of the company showing whether it is a paying road or otherwise, or information regarding what prices have been received by the municipality for granting such rights.

The presumption is that the assessment made by the assessors is correct, and their work cannot be overthrown without evidence that their conclusion is erroneous.   If the relator was able to present to the court any method of valuation which would obviously reach a correct result, like the earning capacity rule in a case where it is applicable, the court would be justified in reassessing the property upon such basis; but that has not been done in this case.   When the return shows that the assessors have wrestled with this difficult problem, as they obviously have done in this case, and have reduced the method of assessment to uniformity throughout the State, their labors in assessing thousands of special franchises of the nature of the one under consideration should not be overthrown without evidence showing that their conclusion is certainly erroneous.

The assessment should be reduced by striking therefrom the assessment upon all those crossings of which, according to the stipulation, the railroad company had prior occupancy, and also the Atlantic avenue crossing, and by making the valuation of

the tangible property accord with the stipulation as to amounts, and as so reduced the assessments should be confirmed. The question of costs will depend upon whether the reduction equals one-half of the amount claimed in the petitions. I have passed upon the proposed findings submitted by the relator. Let the defendants submit findings and settle order on notice.

