**428** PEOPLE EX REL. N. Y. C. & H. R. R. R. Co. *v.* WOODBURY.

Third Department, May, 1915. [Vol. 167.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant, Respondent, *v.* EGBURT E. WOODBURY and Others, Constituting the STATE BOARD OF TAX COMMISSIONERS, Respondents, Appellants.

Third Department, May 5, 1915.

Tax — valuation of tangible property included in special franchise — special franchise in additional land acquired by railroad after opening of street across its tracks.

Tangible property included in a special franchise should be valued at the cost of reproduction less depreciation.

A special franchise involves a grant from competent public authority, and there can be no franchise if an act is done within the boundaries of a street " by virtue of the ownership of the soil or of some interest therein."

Hence, where a railroad company, after a city opens a street and builds a bridge over its tracks acquiring a mere easement for street purposes, acquires additional lands adjacent to its original right of way, and uses it for switch tracks underneath the bridge, it should not be assessed as a special franchise.

So, also, additional lands acquired by a railroad company across streets laid out subsequent and adjacent to its right of way, upon which no structures have been erected, are not assessable as for a special franchise.

CROSS-APPEALS by the relator, The New York Central and Hudson River Railroad Company, and the defendants, Egburt E. Woodbury and others, from an order of the Supreme Court, made at the Albany Special Term and entered in the office of the clerk of the county of Albany on the 26th day of August, 1914.

*Albert H. Harris* [*George H. Walker* of counsel], for the relator.

*Egburt E. Woodbury, Attorney-General* [*C. R. McSparren, Deputy Attorney-General*, of counsel], for the defendants.

SMITH, P. J.:

These appeals are from an order in certiorari proceedings brought to review certain special franchise tax assessments in the city of Yonkers for the year 1907. Upon the return of the order for the issuance of the writ a referee was appointed to

take evidence and report to the court with his findings of fact and conclusions of law.    Evidence was thereafter taken by the said referee and his report duly filed, by which he determined that all the assessments in question should be set aside and declared void, apparently upon the general ground that the return of the defendants was insufficient, in addition to other and special grounds applicable to certain ones of the various special franchises involved.    The issues were then brought to trial before Mr. Justice CHESTER at the Albany Special Term, and argued and submitted upon the record taken before the referee and upon his report.    Mr. Justice CHESTER disapproved of the conclusions of the referee and made his own findings of fact and conclusions of law, which decision is now before us for review.    Of the total number of assessments involved seven were struck out by the consent of the parties upon the ground that they covered so-called junior occupancies, the streets in question having been laid out subsequent to the construction of the railroad.

Of the assessments still in dispute a number involved the question as to whether the total values given to the special franchises by the defendants, the State Board of Tax Commissioners, may properly be reduced when the values assigned by the Board to the tangible property of the special franchise are shown to be excessive.    The valuation sheet of the State Board shows for the Morgan Street crossing, to cite a typical instance, an " estimated value " of the tangible property of $23,500, and a " final value " of the special franchise at $40,000.    The tangible property of the relator at this point consists of a steel trestle over the street.    It was admitted by the State Board that the total cost to reproduce this steel structure in 1907 was $16,487, and the Board accordingly has formally requested that the special franchise be reduced by $7,013, the amount of the conceded overvaluation of the tangible property.    But the State Board also conceded that the present value of this structure in 1907, allowing for depreciation, was only $10,327, and the relator accordingly asked for a further reduction of the special franchise to $26,827.    The learned trial judge, however, declined to make any reduction whatever in the value of this special franchise on account of the overvaluation of the tangible property,

430   PEOPLE EX REL. N. Y. C. & H. R. R. R. CO. *v.* WOODBURY.

Third Department, May, 1915.                    [Vol. 167.

and confirmed the original assessment at ninety per cent thereof, or $36,000. This ten per cent reduction was made to equalize the special franchise value with the assessed values of real property in the city of Yonkers and is not contested upon this appeal. No opinion was handed down by the court, but this holding apparently is based upon the view that inasmuch as no evidence was given by either the State Board or the relator as to the facts or methods used or proper to use in arriving at the values of these special franchises apart from the tangible property, the values fixed by the Board were presumptively correct until the contrary should be affirmatively shown. (See *People ex rel. New York & R. B. R. Co.* v. *Tax Comrs.,* 157 App. Div. 496, 500; affd., 209 N. Y. 599.) We are unable to agree with this view. The matter of determining the value of a special franchise is admittedly one of considerable difficulty and as to which experts might well differ. But the valuation of the tangible property included in a special franchise presents no such difficulties. As to such tangible property we think the usual rules as to value should apply, and that it should accordingly be valued at the cost of reproduction less depreciation. If, then, the actual value of this trestle was only $10,327, the amount of its overvaluation on the valuation sheet should clearly be deducted from the total assessed value. To hold otherwise would be carrying the general presumption of correctness as to the valuations of special franchises to the extent of holding that when a large error has been shown in one part of the whole a second compensating error at least as great must be presumed to exist in the other part, so as to preserve the original total.

The relator has further appealed from that part of the order which fixes the Babcock Place franchise assessment at $2,716, or, as equalized, $2,471. It appears that Babcock place was opened as a public street subsequent to the building of the railroad, and was carried over the tracks upon a bridge. After the laying out of the street and the construction of the bridge the relator acquired additional lands in the street adjacent to its original right of way, upon which had been located two sidings and two switch tracks in addition to the four tracks upon its original right of way. It does not appear that the city acquired by the condemnation proceedings opening said

street anything more than an easement for street purposes. Furthermore, the part of this street occupied by the siding and switch tracks was underneath the bridge, and these adjacent and subsequently acquired lands of the relator were apparently not otherwise occupied. The order appealed .from held that there was a special franchise as to these subsequently acquired lands of the relator in the street, and fixed the value for the same at a certain percentage of the value established by the State Board, this ratio being found by comparing the area of the subsequently acquired adjacent lands lying in the street, with the total area of all the lands of relator in the street at the time of the assessment. From the value of the special franchise as thus computed a deduction of ten per cent was made for equalization purposes. We are unable to find upon this state of facts any special franchise whatever at this point. A special franchise involves a grant from competent public authority, and there can be no franchise if an act is done within the boundaries of a street "by virtue of the ownership of the soil or of some interest therein." (*People ex rel. Long Island R. R. Co.* v. *Tax Comrs.*, 148 App. Div. 751, 756; affd. on opinion below, 207 N. Y. 683; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Woodbury*, 203 id. 167, 176.) By acquiring an easement in land for street purposes and then locating the grade of the street upon a bridge the public would ordinarily be excluded from the surface of the ground and confined to the use of the bridge alone. The original owner of the lands taken for street uses remains in full possession of all rights in connection with his property the same as formerly, so far as they are not appropriated by the public for the public use, and would, accordingly, have had the right to use the street lands under this bridge for any purpose that would not interfere with any possible right of the city therein, such as the right to lay underground water mains, sewers and conduits, and to maintain above the ground poles and wires. And whatever rights under this bridge the original owner had would, of course, be transferred by him by a conveyance of the lands in fee to the relator and would then be held by it not under any special franchise, but "by virtue of the ownership of the soil." (See 37 Cyc. 207.) In the absence of any special facts in the record

432    People ex rel. N. Y. C. & H. R. R. R. Co. *v.* Woodbury.

Third Department, May, 1915.                    [Vol. 167.

we think the presumption is that the occupancy of the relator of these after-acquired lands in the street was not by virtue of any special franchise and that the assessment therefor should be canceled.

The remaining questions involve portions of the order from which the defendants alone have appealed. They now claim error by the court in striking out entirely the assessments of Pier and Fernbrook streets and Wells and Ashburton avenues. The situation regarding the two avenues is that after they had been laid out across the existing railroad of relator it acquired additional lands across these avenues and adjacent to its right of way. No structures have been put upon such adjacent lands within such highways, nor is there any evidence of any intent to lay additional tracks thereon. As shown above, a special franchise cannot arise except from a grant by public authority, and no such grant was here shown or is in fact needed until the relator should wish to use these streets for purposes distinctively of a railroad nature, and so in conflict with the rights of the public upon these avenues. The situation regarding the two streets mentioned involves practically the same state of facts, with the further feature of an additional track subsequently laid across the two streets by relator, but within the limits of its original right of way. It is also claimed that the streets were widened prior to the laying of the additional track. We think this situation is governed by the rule as to junior occupancies as laid down in the *Woodbury Case* (*supra*). The acquisition by relator of its general franchise and right of way long prior to the location of any public highways at these points gave to it full authority to use its entire right of way for railroad purposes and thus to locate thereon additional tracks at any time in the future. By laying out a street across this right of way the public simply obtained a right of user for highway purposes, but could not thereby limit the then existing right of the relator to lay additional tracks as it might see fit.

The finding of fact of which this court disapproves is that the value of the special franchise of relator in said Morgan Street crossing for the purposes of taxation was $36,000, and we hereby find that said value was $24,144.30. Similar findings of fact are disapproved of regarding all other special

franchises, without now specifically naming them, involving similar questions of overvaluation of the tangible part of said special franchises, and values for the same are hereby found in accord with the contention of relators. This court further disapproves of the finding of fact that the value of the special franchise of relator in said Babcock place for the purposes of taxation was $2,471, and finds that there was no special franchise of relator in said Babcock place.

The order appealed from should be modified in accordance with the foregoing opinion, and as so modified confirmed, without costs to either party.

All concurred.

Order modified in accordance with opinion, and as modified affirmed, without costs to either party.