THE PEOPLE OF THE STATE OF NEW YORK ex rel. WESTERN NEW YORK AND PENNSYLVANIA RAILWAY COMPANY, Appellant, *v.* WALTER H. KNAPP et al., Constituting the State Tax Commission of the State of New York, Respondents.

Tax — railroads — special franchise — assessment — sale by State of abandoned canal lands to corporation which agreed to construct railroad thereon — reservation in deed of right to retain portions of canal to conduct waters of feeder to another canal — subsequent agreement between State and grantee under which grantee agreed to provide pipes to conduct waters of feeder and State issued permit for construction of railroad along banks of canal — land on which road was built owned by grantee in fee and special franchise tax on successor in title illegal — appropriation of portions of right of way for Barge canal and quitclaim deed of easements to cross same — arrangement does not constitute a franchise upon which tax may be levied.

1. Where, pursuant to chapter 404 of the Laws of 1877 and chapter 326 of the Laws of 1880, the latter of which acts authorized and required the Commissioners of the Land Office to sell and convey the title of the State, in and to the banks and prism of an abandoned canal, to the company which would give a bond to construct and

operate within two years a railroad between certa n points over the land of said canal, the relator's predecessor n title, a company organized for the purpose, purchased the canal lands in question, executed the bond and received a deed from the State granting to it " all the right, title and interest which the State of New York has in and to the banks and prism " of the said canal, excepting and reserving the right to retain a specified portion of said canal and the right to retain any portion of the prism of said canal for the purpose of conducting the waters from any feeder or reservoir to the Erie canal, the conveyance gave to the grantee the fee of the land sufficient at least to enable it to construct and maintain a railroad over it.

2. The grantee, by its purchase, took the fee to the prism and banks of the abandoned canal subject to the right of the State to conduct the waters of the feeders to the Erie canal by some arrangement not inconsistent with the grant. Where, therefore, after the grantee began the construction of its railroad, a suit by the State to restrain its construction was discontinued under an agreement whereby the grantee was to provide for the taking of the waters of a certain feeder to the Erie canal, and, upon its application, a permit was granted for the construction of its railroad along the banks of the abandoned canal, and the grantee built its railroad in accordance with the deed and the contract, the land on which the road was built was owned by the grantee in fee and an assessment of a special franchise tax upon its successor in title, on the theory that the railroad runs over public lands under a permit, is illegal.

3. Nor may a special franchise tax be legally assessed upon relator's bridges crossing the Barge canal at points where it owned its right of way in fee prior to the construction of such canal, but portions of which had been appropriated by the State under the authority of the Barge Canal Acts (L. 1903, ch. 147, and L. 1915, ch. 511), where, pursuant to the provisions of such statutes and in order to adjust the damages, the State had entered into an agreement with the relator and in accordance therewith had delivered to it a quitclaim deed of an easement to use and occupy forever for railroad purposes the premises described, which deed recited that such premises were no longer considered necessary for the Barge canal. Such arrangements do not constitute a franchise and the railroad company operates under a grant of property rights from the State.

*People ex rel. W. N. Y. & P. Ry. Co.* v. *Knapp,* 209 App. Div. 760, reversed.

(Argued November 24, 1925; decided December 15, 1925.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered

June 27, 1924, which reversed, on certiorari, an order of Special Term entered upon the report of a referee reducing certain special franchise tax assessments.

*Frank Rumsey* for appellant. Relator's occupancy of the premises described as " track lengthwise on State land (old Genesee Valley canal — within blue lines) from south line of West avenue to north right-of-way line of Barge canal excluding crossings listed separately " is not under a special franchise but as an owner of the premises under a grant from the State. (*Osborne* v. *Auburn Tel. Co.*, 189 N. Y. 393; *City Club of Auburn* v. *McGreer*, 198 N. Y. 609; *Blackman* v. *Striker*, 142 N. Y. 555; *Myers* v. *Bell Telephone Co.*, 83 App. Div. 623.) The Barge canal crossing of relator's railroad described as the Gates-Rochester crossing does not constitute a special franchise. (*People ex rel. R. S. & E. R. R. Co.* v. *Moroney*, 224 N. Y. 114; *People ex rel. Lehigh Valley Ry. Co.* v. *State Tax Comm.*, 206 App. Div. 549; 240 N. Y. 591; *People ex rel. Hudson & M. R. Co.* v. *Board of State Tax Comrs.*, 203 N. Y. 199; *People ex rel. L. I. R. R. Co.* v. *Tax Comrs.*, 148 App. Div. 751; 207 N. Y. 683.) The Chili-Rochester crossing of the Barge canal by relator's railroad is not under a special franchise. (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Walsh*, 211 N. Y. 90.) Relator's railroad was in existence at the Gates-Rochester and the Chili-Rochester crossings many years before the construction of the Barge canal at said points; and because of such prior occupation by relator its occupancy is not under special franchises. (*People ex rel. N. Y. C. R. R. Co.* v. *Woodbury*, 203 N. Y. 167; *People ex rel. L. I. R. R. Co.* v. *Tax Comrs.*, 148 App. Div. 751; 207 N. Y. 683; *People ex rel. H. & M. R. R. Co.* v. *State Board of Tax Comrs.*, 203 N. Y. 119.)

*Albert Ottinger, Attorney-General (Frederic J. Merriman, Alexander L. Saul* of counsel), and *George B. Draper* for

respondents. The lands in question are canal lands and are occupied and crossed by relator's railroad under and by virtue of the provisions of the general Railroad Law of 1850. Such occupation and crossing constitute that species of property called special franchise. (*People ex rel. R. S. & E. R. R. Co.* v. *Moroney*, 224 N. Y. 114; *People* v. *Fisher*, 190 N. Y. 468–478; *People ex rel. N. Y. C. R. R. Co.* v. *Walsh*, 211 N. Y. 90; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Woodbury*, 203 N. Y. 167; *People ex rel. L. I. R. R. Co.* v. *Tax Comrs.*, 148 App. Div. 751; 207 N. Y. 683; *People ex rel. H. R. & P. C. R. R. Co.* v. *State Board of Tax Comrs.*, 215 N. Y. 507.) Relator's occupancy at the Rochester-Chili Barge canal crossing constitutes a special franchise. The crossing is one over canal lands and is crossed by the railroad under and by virtue of the provisions of the general Railroad Law of 1850. (*People ex rel. N. Y. C. R. R. Co.* v. *Walsh*, 211 N. Y. 90.) Assessment " 15. Track lengthwise on State land within blue line. From south line of West avenue to north right of way line of Barge canal, excluding crossings listed separately," the *locus in quo*, is canal land and, therefore, a public place. The crossing or occupation of said land by the tracks of a railroad is a special franchise and taxable as such. (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *State Board*, 167 App. Div. 535; 216 N. Y. 651.)

CRANE, J. The relator has been assessed for certain alleged special franchises. It claims to operate its railroad at the places designated under easements conveyed by the State and over its own property, and not by reason of any special privilege or franchise.

The matter was referred to ex-judge NATHANIEL FOOTE as official referee, who reported in favor of the relator. The Appellate Division has reversed, and found in favor of the State.

The franchises have been considered under three differ-

**368** People ex rel. W. N. Y. & P. Ry. Co. *v.* Knapp.

[241 N. Y. 364]          Opinion, per Crane, J.          [Dec.,

ent heads, and I will treat them the same way, taking up first the " Lengthwise occupation of the former Genesee Valley canal lands," so called in this proceeding. The State says the railroad runs over public lands under a permit; the railroad claims to own the right-of-way.

The Genesee Valley Canal Railroad Company was organized under chapter 140 of the Laws of 1850, and in November of 1912 was merged with and became the Western New York and Pennsylvania Railway Company, the relator herein. It operates a railroad between the Erie canal in the city of Rochester, county of Monroe, and the village of Millgrove or the city of Olean, in the county of Cattaraugus, substantially along the lines of the old Genesee Valley canal. This canal was abandoned by the State and the property sold to the relator, pursuant to chapter 404 of the Laws of 1877 and chapter 326 of the Laws of 1880. This latter act authorized and required the Commissioners of the Land Office to sell and convey the title of the State in and to the banks and prism of the Genesee Valley canal, between the Erie canal in the city of Rochester, and the village of Millgrove or of Olean in the county of Cattaraugus, to the company which would give a bond in the penal sum of $700,000 to construct and operate within two years a standard gauge railroad between said points and over the land of said canal. The Genesee Valley Canal Railroad Company was organized July 16, 1880, and purchased the canal lands under this act, executed the bond and received the deed from the State. The deed, dated November 6, 1880, grants to the Genesee Valley Canal Railroad Company " all the right, title and interest which the state of New York has in and to the banks and prism of the Genesee Valley Canal, between the Erie canal, in the city of Rochester, county of Monroe, and the village of Millgrove, in the county of Cattaraugus. Together with all and singular the rights, belonging or in any wise appertaining, etc. * * * Also excepting and reserving to ourselves the right to

retain that portion of said Canal from the point where Allen's creek feeder enters the same to the Erie canal. Also excepting and reserving to ourselves, the right to retain any portion of the prism of said canal for the purpose of conducting the waters *from any* feeder and reservoir to the Erie canal."

This conveyance gave to the railroad company the fee of the land sufficient at least to enable it to maintain and construct a railroad over it. This was the purpose of the act of 1880. Under it, upon giving the bond and receiving the deed, the company was compelled to construct its railroad within two years.

It cannot be that the State retained the fee title to this portion of the canal land. The last clause, above quoted, says that the grant excepts the right to retain *any* portion of the prism for the purpose of conducting waters from any feeder. If this meant that the State excepted the fee of the land for such purpose, the whole grant was nullified. The railroad company by its purchase took the fee to the prism and banks of the canal, subject to the right of the State to conduct the water from the feeders to the Erie canal by some arrangement thereafter to be made, or plan adopted by its agents or engineers, not inconsistent with the grant. Two things were to be done. The railroad was to be constructed and operated over the canal lands purchased in fee by the railroad company, and the State was to get the water from the feeders into the Erie canal also over or through said land. The railroad company got the fee sufficient for its railroad purposes and the State got this right or easement.

The railroad company began the construction of its railroad when suit was brought by the Attorney-General at the instance of the Superintendent of Public Works to restrain its construction. The suit was discontinued upon an agreement executed by the railroad company to provide for the taking of the water in Allen's creek feeder to the

Erie canal. The Genesee Valley Canal Railroad Company on September 28, 1881, presented to the Superintendent of Public Works an application for written permission to construct its railroad along the *banks* of the Genesee Valley canal, agreeing to lay at its own cost iron pipes to conduct the water from the feeder to the Erie canal or to the Genesee river feeder. A permit was granted upon these terms and an agreement made in accordance therewith on the eighth day of November, 1882. The company agreed in no wise to fill up the prism of the canal now used as a feeder or to interfere with the flow of the water from Allen's creek to the point specified. As heretofore stated, the railroad company constructed its railroad upon the land or banks designated by this agreement. Likewise, the State obtained the water through the pipes from the feeders to the Genesee feeder and the Erie canal.

In view of what I have stated about the original deed or grant, it is apparent that the State intended to grant to the railroad company the land in fee, upon which its road was to be constructed. After the contract, the company built its railroad in accordance with the deed and the contract. Thus the land designated for the railroad in no way interfered with the water from the feeders and the right retained by the State did not obstruct the railroad. The land on which the road was built, therefore, was owned by the company under its deed from the State authorized by the act of 1880.

The State, several years before the assessments here in question, discontinued the use of Allen's creek feeder to supply the Erie canal.

This assessment, known as the lengthwise occupation of former Genesee Valley canal lands, proceeds upon the theory that the State owns these lands in fee, and that the railroad company operates under the permit that the Public Works Commissioner issued in 1881. The Attorney-General asserts in his brief the following: " The

People ex rel. W. N. Y. & P. Ry. Co. *v.* Knapp. **371**

1925.]                    Opinion, per Crane, J.                    [241 N. Y. 364]

assessment in question relates to and covers the occupation of the land described in the permit granted by the Superintendent of Public Works on the 30th day of September, 1881, and is made upon the theory that such lands, being canal lands, are a public place within the meaning of the tax law, and that the occupation thereof including the value of all franchises, rights or permission to construct, maintain or operate a railroad on or through such public place constitutes that species of real property called ' Special Franchise.' "

" The use," says he, " of such lands for canal purposes had been discontinued, but, notwithstanding this fact, the lands were still retained and owned by the State as canal lands, and were, therefore, a public place within the meaning of the Tax Law."

For the reasons above stated, I do not agree with this claim of the Attorney-General. It seems to me as if the purpose and wording of the acts referred to gave to the railroad company under its deed of purchase the fee of the land upon which its road was to be constructed, as arranged by the subsequent permit and agreement. Of course we are now dealing only with that portion affected by this assessment.

As to the assessment termed for convenience " The Gates-Rochester Barge Canal Crossing," we have the following facts: The new Barge canal crosses the railroad, which now goes over it on bridges which have been constructed. It is claimed that these crossings constitute special franchises which can be assessed and taxed. At these points the relator owned its right-of-way in fee by deed acquired in 1882, and since the time of the railroad construction maintained and operated its railroad over its own right-of-way up to the time that the Barge canal was constructed.

The Barge Canal Act (Laws of 1903, chap. 147, as amd. by Laws of 1915, chap. 511) authorized the State to appropriate in the manner therein designated, lands for the

Barge canal.   The State could take any and all rights and property necessary for this purpose.   Section 5 of chapter 511 of the Laws of 1915 provides that in the event that any land or structures, in whole or in part, heretofore taken, shall be found not to be necessary for canal purposes, the State Engineer shall so report to the Canal Board, and the Superintendent of Public Works shall have authority to execute and deliver to the owner from whom the property was taken a quitclaim deed covering such lands, structures, waters, et cetera.   Acting under this authority, an agreement was made between the State agents and the relator on the fourth day of March, 1916, followed by a deed the third day of April, 1917, accomplishing the following.   The deed recites that the State had formerly appropriated from the Western New York and Pennsylvania Railway Company a parcel of land for Barge canal purposes, and that an agreement of March 4, 1916, had been executed to adjust the damages wherein the State agreed to execute and deliver to the Western New York and Pennsylvania Railway Company a quitclaim deed of an easement to use and occupy forever for railroad purposes the premises described, and further *recites* that the easement for railroad purposes was *no longer considered necessary* for the Barge canal, and concludes with the following grant: " Now, therefore, pursuant to and in accordance with the foregoing resolution of the Canal Board of the State of New York and the statutes in such cases made and provided, the party of the first part  *  *  *  has sold and by these presents does grant, release and quitclaim unto the said party of the second part  *  *  *  an easement to use and occupy forever for railroad purposes " the lands in question, describing them.

We have held in *People ex rel. New York Central & Hudson River Railroad Co.* v. *Walsh* (211 N. Y. 91, 96, 97) that such grant of an easement was legal and violated no constitutional provision.   The court said of article 7,

section 8, of the State Constitution: " It does not interdict the legislature from authorizing the appropriation of an estate less than the fee in the lands required for the canals. * * * The constitutional provision did not prohibit the state from agreeing to convey to the relator the permanent easement in the appropriated lands."

Here we have a railroad running over its own right-of-way. It is obliged to run. The Barge canal passes under it, and the road has to cross it on a bridge. The Barge Canal acts, above referred to, provide for such crossings. The State does not need the railroad for the canal; it needs certain lands which it has taken, and, therefore, agrees with the railroad company that it may continue to operate its railroad over the Barge canal on a bridge in place of its former fee land. To accomplish this purpose, and to quiet all question, the State deeds an easement to the railroad for this purpose. The railroad has the bridge as an easement instead of the land which it formerly owned in fee. The result is not unlike the arrangement or exchange of properties made in *People ex rel. Long Island R. R. Co.* v. *State Board of Tax Commissioners* (148 App. Div. 751; 207 N. Y. 683).

We do not think that these arrangements constituted a franchise. The railroad company operated under a grant of property rights from the State.

*People ex rel. Rochester, Syracuse & Eastern R. R. Co.* v. *Moroney* (224 N. Y. 114) is not in point, as the State merely granted to the railroad company after obtaining the fee, a revokable license to operate. This was held to be a franchise, mere permission to cross public property.

As to the Chili-Rochester Barge canal crossing, the facts with some exceptions are similar to those just stated in the Gates-Rochester Barge canal crossing assessment. There was an appropriation, a contract and a deed dated February 15, 1917. This deed recites a settlement made for damages caused by the appropriation, and conveys to

the railroad company an easement in the lands lying in the town of Chili, similar to that contained in the so-called Gates deed, above referred to. I understand that if our ruling in the Gates crossing assessment be correct, it follows that the same reasoning applies to the facts in this Chili Barge crossing assessment.

For the reasons here stated, the assessments were illegal; the order of the Appellate Division should be reversed, and the judgment entered upon the report of the referee in this proceeding affirmed, with costs in this court and in the Appellate Division.

HISCOCK, Ch. J., POUND, McLAUGHLIN, ANDREWS and LEHMAN, JJ., concur; CARDOZO, J., not voting.

Order reversed, etc.